IN **THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WAYNE RIPPLE | : | CV NO. 1:CV-12-2234 |
| | : | (Judge Jones) |
| Plaintiff | : | (Mag. Judge Blewitt) |
| | : | |
| VS. | : | |
| | : | |
| OLYMPIC STEEL INC., DANNY | : | |
| JONES, BOB DAVIS, THOMAS NEIL, | : | |
| AND CHRIS SCHENZEL, | : | |
| | : | |
| Defendants | : | JURY TRIAL DEMANDED |
| | : | |

## AMENDED COMPLAINT

### Introductory Statement

1. This is an amended complaint brought by leave of court permitting plaintiff an opportunity to file an adequate pleading as per this court's order dated November 16, 2012.

### Jurisdiction and Venue

2. Jurisdiction is vested in this court by 28 USC §1331 and 28 U.S.C. §1343 (a) (3) and (4) and the remedial statutes 42 U.S.C. §12101 et seq (the "ADA"), and 43 Pa. Cons. Stat. Ann. §§ 951-63 et seq (the "PHRA").

3. Jurisdiction for hearing Supplemental State claims is grounded in 28 USC §1367(c).

4. A jury trial is demanded.

5. Punitive damages will be requested at an appropriate time in this litigation because defendants' misconduct was particularly outrageous. Such damages will be sought against the individual defendants only. Punitive damages cannot be assessed against municipal defendants under current §1983 law.

6. Venue is properly in the Middle District of Pennsylvania because all parties and witnesses, and all known evidence, are common to Franklin County Pennsylvania which lies within the jurisdiction of the United States District Court for the Middle District of Pennsylvania.

7. Plaintiff has procured a timely right to sue from the EEOC which was affixed to his original pro se complaint and has been acknowledged by this court in paragraph 1 of its November 16, 2012 order. By virtue of the EEOC's referral to the PHRC plaintiff also brings claims under the Pennsylvania Human Relations Act.

8. Plaintiff is limited in "a major life activity" i.e., he has a severe stutter which affects his speech invoking the jurisdiction of the ADA under the facts pled herein:

"The ADA does not define "major life activities." *Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir.1994), *cert. denied,* ___ U.S. ___, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). The EEOC regulations, however, provide, that an individual is substantially limited in a major life activity if he is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). In relevant part, the regulations suggest considering "[t]he nature and severity of the impairment."[4] 29 C.F.R. § 1630.2(j) (2) (i). Kelly admits that he is able to walk so the question presented is whether he adduced sufficient evidence from which a fact-finder reasonably could conclude that the nature and severity of his injury significantly restricted his ability to walk as compared with an average person in the general population." *Kelly v. Drexel University, 94 F. 3d 102 (3d Cir. 1996).*

### Operative Facts

9. Plaintiff Ripple is a highly skilled maintenance mechanic who was employed by defendant Olympic Steel Inc. beginning on October 23, 2006.

10. On or about the spring and summer of 2011 ripple suffered a number of hostile work environment incidents that began to have an increasingly negative cumulative effect on his emotional well-being.

11. Wayne Ripple's stutter, which is immediately noticeable when communicating with him, is pronounced and severe. However, his stutter does not negatively affect his skills or ability as a highly competent maintenance mechanic.

12. Defendant Danny Jones was Wayne's immediate supervisor. Wayne experienced adverse mistreatment including ridicule and harassment at Jones hands and by his colleagues at work who more or less took a cue from Jones in their mistreatment of Ripple.

13. When Wayne Ripple attempted to use the Olympic restroom commode stalls he was often harassed by other employees who would pound on the bathroom stall he was using and sometimes cold water would be thrown on him while he was in the stall relieving himself. This was known to his supervisors and the defendants who took no action to prevent it.

14. All other maintenance employees were permitted to use the intra-plant radios to communicate except for Wayne Ripple who was expressly ordered by Jones not to use the devices. Ripple alleges this was because of his stutter and resulted in great embarrassment and humiliation to him because it was known to everyone.

15. On or about the spring and early summer of 2011 the humiliating and degrading harassment described above which was occurring in the workplace at Olympic reached a level where Ripple could no longer take the anxiety and embarrassment. Ripple could no longer bear the humiliation.

16. For example, on or about early May 2011 Ripple was talking with "Paul" from Reliance Crane who, when Wayne advised him about the "open phase" (a phrase dealing with electric power supply) on the "power track" for the 7500 Crane, told Wayne that he was not to listen to what Wayne said because Danny Jones said that Wayne was "kinda slow".

17. Wayne Ripple is not mentally "slow" and is quite intelligent and intellectually capable as is evidenced by his good performance as a mechanic. Jones' insulting and injurious words to the vendor about Wayne's competence and expertise was excruciatingly humiliating, painful and embarrassing.

18. On or about July 12, 2011 plaintiff was speaking with the defendant Bob Davis about his disagreements with certain terms and conditions of employment, namely Olympic's "point system" where the equivalent of demerits are assigned for various transgressions of company policy.

19. After Wayne had finished complaining Davis retaliated by saying "we'll bring up the picture we have of you in the bathroom". Davis described the picture as one taken of Wayne secretly while he was on the commode in one of building 1599's bathroom stalls. Davis told Wayne the picture was shown to him by Danny Jones. Ripple was horrified upon learning that secret pictures had been taken of him while he was relieving himself in a bathroom stall while at work. He was further humiliated upon realizing that supervisors and coworkers had circulated this picture and had known about it for a considerable period of time while he was totally unaware.

20. Olympic's leadership, including plant manager defendant Tom Neil, Olympic Human Resources Director defendant Chris Schenzel, and Wayne's immediate supervisor, the defendant Danny Jones, were all familiar with the picture that was surreptitiously taken of the plaintiff while he was in the bathroom-stall at building 1599. None of these supervisors, who had a responsibility to protect Wayne Ripple, and act responsibly on his behalf, did so. All ratified the violations of his privacy and the discrimination aimed at him because he had a severe stuttering problem. Wayne was the undeserving object of cruel and heartless ridicule.

21. On July 13, 2011 plaintiff went to see his doctor who ordered him to stay off work for at least two weeks. His doctor put him on medication to control depression and anxiety. He was shortly called by the defendant Schenzel who told plaintiff he was terminated but admitted that he also had known of the picture and that he "expected this".

22. As plaintiff went to turn-in his work related property he was called by Tom Neil who advised plaintiff that his information about the picture of him in the bathroom stall was correct but that no one would tell him (Neil) who took the picture. He also told Wayne that he wanted Wayne back at work and needed him but when Wayne presented the doctor's note indicating he was to be off until 7/25/2011, Neil told Wayne that he could only have off until 18 July or he would be fired. Wayne went back on July 18 and ended up at Chambersburg Hospital on July 19, 2011.

23. On about this time Wayne, on doctor's orders, was told to stay away from work until September 13, 2011 and he was also prescribed a counselor in State College Pennsylvania.

24. Plaintiff was afraid to use the bathroom at work or to eat lunch there, so he would control himself so he wouldn't have to use the facilities while at Olympic but nonetheless he returned to work when he was permitted to do so by his doctor.

25. Plaintiff transferred to the third shift to avoid the defendant Jones.

26. Because of continued pressures, including the continuing hostile and condescending attitude and comments from Jones, along with collusive ostracism from co-workers, Ripple finally left Olympic on November 11th, 2011. Ripple alleges he suffered a constructive discharge.

27. It is common knowledge that persons with stuttering problems frequently suffer discriminatory mistreatment and intolerance.

28. Wayne Ripple's stuttering problem is self evident and quite severe, although his mechanical aptitude and intelligence are above average. Speech and the ability to talk is clearly a "major life activity" for purposes of the ADA.

29. Despite being supervised by Danny Jones, Wayne Ripple worked efficiently and effectively for years as a maintenance mechanic at Olympic even though he was forced to tolerate hostile, impatient, and intolerant supervisory treatment from Jones.

30. Jones ridiculed Wayne Ripple and frequently talked to him and treated him intentionally as if he had a low intelligence because Jones was intolerant and hostile towards ripple because of his disability. Chris Schenzel did the same, repeatedly asking Wayne when he talked to him "do you understand" "do you understand" "do you understand" as if he were lacking in intelligence which he clearly is not.

31. By stigmatizing Ripple through overt exclusion in using intra-plant communications Jones demonstrated cruel, humiliating, and unlawful discriminatory hostility towards Wayne Ripple.

32. Describing Ripple as "slow" to those (particularly those outside Olympic) was in violation of the ADA because it was cruel and humiliating and did not constitute a proper or correct characterization of Ripple's intelligence or ability but rather was hostile and discriminatory lacking any rational basis.

33. Plaintiff was denied a deserved promotion by Jones in retaliation for his complaining and because of his disability. This occurred on or about the fall of 2011.

34. Based upon the foregoing factual allegations the plaintiff Wayne Ripple alleges violations of his rights under the Americans With Disabilities Act and under the Pennsylvania Human Relations Act. He further alleges violations of Pennsylvania state tort law to include

violations of his rights to be free of the intentional infliction of emotional distress and the violations of his privacy. In addition Wayne Ripple demands reimbursement for lost wages, benefits, and interest in an amount in excess of $50,000 to be proven at time of trial.

35. Ripple was even told by Ken Blackwelder, the General Manager of "George & Sons Manufacturing Inc." that even though his interview went very well that he would not be hired because of a negative recommendation from a former employer.

36. It is Ripple's best recollection that the only former employer he identified was Olympic.

37. Ripple alleges that he did absolutely nothing to deserve the mistreatment he received at the hands of the defendants and that falsely identifying him as a poor employment prospect was blatant retaliation and was unlawful.

## COUNT I

### Plaintiff against Olympic Steel Inc. for the Violation of His

### Rights Pursuant to the ADA

38. Paragraphs 1-37 above are incorporated herein by reference.

39. Plaintiff has a disability within the meaning of the ADA, to wit, an extremely severe stuttering problem.

40. Plaintiff is highly qualified to perform the essential functions of his job, maintenance mechanic, which he has been doing for many years.

41. Until recently (2006 through early 2011) the plaintiffs stuttering problem was accepted and understood by his supervisors and co-workers and in no way interfered with his employment proficiency at Olympic Steel Inc.

42. Plaintiff has suffered undeserved adverse employment decisions for unlawful discriminatory reasons in the following particulars:

   a. Plaintiff was ordered by his immediate supervisor, the defendant Danny Jones that he was not permitted to use the intra-plant telephone communications network. All that was needed as an accommodation was a very small amount of the patience, toleration and understanding.

   b. Plaintiff was subjected to egregious humiliation and scorn by his immediate supervisor Danny Jones who told an outside vendor not to listen to Wayne Ripple's advice because he was "kinda slow". Wayne Ripple is a man of good intelligence who has proficiently worked for years performing highly technical work for Olympic Steel Inc (Olympic).

   c. Plaintiff was subjected to persistent humiliation, whereby, with the tacit ratification of the individual defendants, who work as active supervisors for defendant Olympic, he was harassed when using the restroom at work which harassment included banging on the bathroom stalls and throwing cold water on plaintiff.

   d. A picture of plaintiff was surreptitiously taken while he was using the bathroom stall at work and the picture was circulated and viewed by his superiors to include the defendants Neil, Schenzel, Davis, and Jones. These individuals had the responsibility to investigate and remedy this discrimination but instead permitted it and even used it as a threat against the plaintiff.

   e. Plaintiff suffered retaliation as a result of complaining about certain terms and conditions of work and employment, and because he complained about the unlawful harassment he was receiving, and because he sought medical intervention.

   Wherefore plaintiff demands judgment of the defendant Olympic Steel Inc. for the violation of his rights under the ADA, for retaliation, for pain and suffering, for humiliation and

embarrassment, for lost wages, benefits, and interest in an amount in excess of $50,000 together with fees and costs, attorneys fees, and such other relief as may be deemed appropriate.

## COUNT II

### Plaintiff against All Defendants for Constructive Discharge as a Supplemental State Claim

43. Paragraphs 1 – 42 are incorporated herein by reference.

44. The defendants unlawfully subjected the plaintiff to a series of persistent harassments and egregious personal mistreatment on account of his disability, stuttering, causing the plaintiff so much emotional upset and stress that plaintiff was forced to leave his employ with the defendant Olympic Steel Inc.

Wherefore plaintiff demands judgment of all defendants for the tort of constructive discharge, for pain and suffering, humiliation and embarrassment, actual damages in an amount in excess of $50,000 to compensate for plaintiffs loss of income, benefits, and interest thereon, punitive damages (excepting Olympic) together with fees, costs, and such other relief as may be deemed appropriate.

## COUNT III

### Plaintiff against the Individual Defendants for the Intentional Infliction of Mental Distress

45. Paragraphs 1- 44 above are incorporated herein by reference.

46. The individual defendants' not only harassed, intimidated, and humiliated plaintiff but they participated in, and in effect ratified, a workplace environment that was excruciatingly painful to the plaintiff causing him severe stress and anxiety. This not only resulted in a constructive discharge, his inability to use the toilet facilities while at work, or to eat lunch at work, but also

severe emotional pain including depression and anxiety further requiring treatment by his doctor with appropriate drugs, in addition to counseling.

Wherefore plaintiff demands judgment of the individual defendants for the intentional infliction of emotional distress together with damages for pain and suffering, humiliation and embarrassment, punitive damages, fees, and costs, and such other relief as may be deemed appropriate.

## COUNT IV

**Plaintiff against All Defendants for the Violation of His Rights**

**Pursuant to the Pennsylvania Human Relations Act**

47. Paragraphs 1 - 46 above are incorporated herein by reference.

48. In accordance with the allegations above all of the defendants have acted to violate the plaintiff's rights under the Pennsylvania Human Relations Act to include the individual defendants who cannot be sued as individuals under the ADA but can be individually sued under the PHRA.

Wherefore plaintiff demands judgment of the individual defendants for the violation of his rights under the Pennsylvania Human Relations Act (all of which are set forth under the same factual allegations made above pursuant to the ADA), for pain and suffering, for embarrassment and humiliation, for emotional distress, with punitive damages together with fees and costs (except as to Olympic), together with fees, costs, attorney's fees, punitive damages and such other relief as may be deemed appropriate.

        Respectfully Submitted,

        <u>s/Don Bailey</u>
        Don Bailey, Esquire
        Attorney ID 23786
        4311 N. Sixth St.
        Harrisburg, PA 17110
        717-221-9500
        717-221-9400 Fax
        AdrienneMamma6@aol.com

January 17, 2013