**IN THE UNITED STATES DISTRICT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**WAYNE RIPPLE,**                              **CASE NO. 1-cv-12-2234**

**Plaintiff**                          **JUDGE WILLIAM W. CALDWELL**

**vs.**                                 **MAGISTRATE JUDGE BLEWITT**

**OLYMPIC STEEL INC.,** *et al.,*

**Defendants.**

**BRIEF IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**BENESCH FRIEDLANDER**
  **COPLAN & ARONOFF LLP**
Steven M. Moss, Esq.
I.D. No. OH 55997
Robert A. Zimmerman, Esq.
I.D. No. OH 55478
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2309

**McNEES WALLACE & NURICK LLC**
Elizabeth A. Maguschak, Esq.
I.D. No. PA 39853
100 Pine St., P.O. Box 1166
Harrisburg, PA 17108

*Counsel For Defendants*

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES…………………………………………………….......ii

I. INTRODUCTION ..................................................................................... 1

II. PROCEDURAL HISTORY ..................................................................... 2

III. STATEMENT OF FACTS ..................................................................... 3

    A. Olympic Hired Ripple as a Maintenance Worker and he Stated that he was not Disabled and did not Require any Accommodations........................................ 3

    B. Ripple Has a Stutter that Did Not Affect his Ability to do his Job or Major Life Activities. ....................................................................... 3

    C. Ripple Received and Understood Olympic's Employment Policies............................ 4

    D. Ripple was Chronically Absent, Tardy and Exhibited Other Performance Deficiencies.................................................................... 4

    E. Ripple Alleged that he Suffered Harassment While at Olympic but Admitted that he has no Proof that it was Related to his Stutter.................................. 5

    F. Olympic Rescinded Ripple's Termination for Violation of its Attendance Policy, Investigated his Complaint and Granted his Request for FMLA Leave............................................................. 7

    G. Olympic Granted Ripple's Request for a Shift Change Upon his Return from FMLA Leave and no Further Incidents of "Harassment" Occurred, but Ripple Still Voluntarily Resigned. ......................................... 9

IV. STATEMENT OF QUESTIONS INVOLVED.................................................... 10

V. ARGUMENT............................................................................................ 10

    A. Summary Judgment Standard .................................................................... 10

    B. Defendants are Entitled to Summary Judgment on Plaintiff's ADA and PHRA Disability Discrimination Claims. ............................................ 12

    C. Ripple's Constructive Discharge Claim Under the ADA and PHRA Fail as a Matter of Law.................................................................... 20

    D. Defendants are Entitled to Summary Judgment on Ripple's Intentional Infliction of Emotional Distress Claim. .................................. 22

VI. CONCLUSION...................................................................................................................... 24

CERTIFICATE OF SERVICE…………………………………………………………………..

**TABLE OF AUTHORITIES**

**Cases**

*Allen v. Verizon Pa., Inc.*, 418 F. Supp. 2d 617 (M.D. Pa. 2005)............................................. 13

*Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S. Ct. 2505, 2511, 91 L. Ed.2d
  202 (1986)................................................................................................................ 11

*Bates v. Wis-Dept. of Workforce Dev.*, 636 F. Supp. 2d 797 (W.D. Wis. 2009) ...................... 13

*Belverena v. Cent. Parking Sys., Inc.*, No. 05-4364, 2005 U.S. Dist. LEXIS
  25911, at *6-7 (E.D. Pa. Oct. 31, 2005) ............................................................. 22, 23

*Bess v. County of Cumberland,* 2011 U.S. Dist LEXIS 81032 (E.D. N.C.) ............................ 13

*Bristow v. Daily Press, Inc.*, 770 F.3d 1251 (4th Cir. 1985), *cert. denied,* 475
  U.S. 1082, 106 S. Ct. 1461, 89 L. Ed. 2d 718 (1986)........................................... 21

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986) .................. 10

*Colwell v. Rite Aid Corp.*, 602 F.3d 495 (3d Cir. 2010) ............................................... 20, 21

*Connors v. Chrysler Fin. Corp.*, 160 F.3d 971 (3d Cir. 1998) ................................................ 20

*Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3d Cir. 1988)..................................................... 23

*D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa.
  501 ............................................................................................................................ 24

*El v. Southeastern Pennsylvania Transp. Auth.*, 479 F.3d 232 (3d Cir. 2007).......................... 11

*Eric v. Donsco, Inc.*, 2010 U.S. Dist. LEXIS 128247 (M.D. Pa.) ...................................... 17, 18

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).......................................................... 17, 19

*Forster v. Manchester*, 410 Pa. 192 (1963) ........................................................................... 24

*Ginsburg v. Aria Health Physician Servs.*, No. 12-1140, 2012 U.S. Dist. LEXIS
  124243 at *26 (E.D. Pa. Aug. 31, 2012)............................................................. 22, 23

*Gray v. York Newspapers, Inc.*, 957 F.2d 1070 (3d Cir. 1992) ......................................... 20, 21

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ............................................................. 17

*Hoy v. Angelone*, 554 Pa. 134 (1998) ................................................................................... 23

*Imler v. Hollidaysburg Am. Legion Ambulance Serv.*, 731 A.2d 169, 173-174
  (Pa. Super. 1999) ................................................................................................... 12

*Jeffrey v. Ashcroft*, 285 F. Supp. 2d 583 (M.D. Pa. 2003)..................................................... 13

*Jones v. UPS*, 214 F.3d 402 (3d Cir. 2000) ........................................................................... 11

*Kaucher v. County of Bucks*, 455 F.3d 418 (3d Cir. 2006)..................................................... 11

*Kelly v. Drexel Univ.*, 94 F.3d 102 (3d Cir. 1996).................................................................. 20

*Liberty Lobby*, 477 U.S. at 248, 106 S. Ct. at 2510 .............................................................. 11

*Martin v. Allegheny Airlines, Inc.*, 126 F. Supp. 2d 809 (M.D. Pa. 2000) ................... 17, 20, 22

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,
  106 S. Ct. 1348, 89 L. Ed.2d 538 (1986)........................................................... 10, 11

*Mullen v. Suchko*, 279 Pa. Super. 499 (1980)........................................................................ 24

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998)........................................ 18

*Papeives v. Kelly*, 437 Pa. 373 (1970) ................................................................................... 23

*Saldana v. Kmart Corp.*, 260 F.3d 228 (3d Cir. 2001) .......................................................... 11

*Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171 (3d Cir. 1988)........................................ 20

*Sterling v. McKesson Automation, Inc.*, 2006 U.S. Dist LEXIS 69159 (W.D. Pa) ............. 12, 13

*Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661 (3d Cir. 1999)................... 13

*Westfall v. Vanguard Group, Inc.*, No. 06-4320, 2007 U.S. Dist. LEXIS 41777,
  *6, (E.D.P.A.) ........................................................................................................ 20

*Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir. 1989) ...................................... 11

**Other Authorities**

*29 C.F.R. § 1630.2(i)* ........................................................................... 14
*29 C.F.R. § 1630.2(j)(1)(ii)* .................................................................. 14
375 Fed. Appx. 633 (7th Cir. 2010) ..................................................... 13
*42 U.S.C. § 12102(2)(A)* ....................................................................... 13
*42 U.S.C. §§ 12101-12213* .................................................................... 12
*43 P.S. §§ 951-963* ................................................................................ 12
*Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 519 (E.D. Pa. 2012) ............................................................................... 12, 13, 16

**Rules**

FED. R. CIV. P. 56 ................................................................................ 10

**IN THE UNITED STATES DISTRICT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WAYNE RIPPLE,                                 CASE NO. 1-cv-12-2234

      **Plaintiff**                          **JUDGE WILLIAM W. CALDWELL**

    **vs.**                              **MAGISTRATE JUDGE BLEWITT**

OLYMPIC STEEL INC., *et al.*,

      **Defendants.**

## I.    <u>INTRODUCTION</u>

Plaintiff, Wayne Ripple ("Ripple") brought this lawsuit against his former employer, Olympic Steel, Inc. ("Olympic") and four of Olympic's managers.   He alleges claims of disability discrimination under a hostile environment theory pursuant to the Americans with Disabilities Act ("ADA") against Olympic and the Pennsylvania Human Relations Act ("PHRA") against all defendants.   He also asserts claims of constructive discharge against all defendants and intentional infliction of emotional distress against the individual defendants.   All claims arise, according to Ripple, from events which allegedly occurred during his former employment with Olympic.

Ripple sometimes stutters when he speaks.   But Ripple freely admitted that his stutter did not affect his job performance as a maintenance worker at Olympic's Chambersburg facility or his major life activities.   Olympic and individual defendants Danny Jones ("Jones"), Bob Davis ("Davis"), Tom Neil ("Neil") and Chris Schenzel ("Schenzel") (collectively, "Defendants") are entitled to judgment as a matter of law on Ripple's ADA and PHRA claims because the undisputed facts show that his condition does not constitute a "disability" as defined by those laws.   Even if Ripple were able to show that he is "disabled", which he cannot, his hostile environment claims fail because of the complete lack of evidence that he was subjected to a

hostile environment due to his stuttering or that his stuttering altered the terms and conditions of his employment at Olympic. Ripple's common law constructive discharge and intentional infliction of emotional distress claims likewise fail as a matter of law. Ripple's decision to voluntarily resign was a function of his admitted extreme sensitivity and not because of any unlawful conduct on the part of Defendants. Lastly, Ripple's emotional distress claim is pre-empted by his PHRA claim and is otherwise devoid of evidentiary support. Ripple should not have filed this case and Defendants are entitled to summary judgment on all counts.

## II.    PROCEDURAL HISTORY

Ripple filed a Charge against Olympic with the EEOC and the PHRA on August 25, 2011 alleging disability discrimination, retaliation and sexual harassment. (Ripple Dep. Exh. 40.)[1] Jones, Davis, Neil and Schenzel were not named as charged parties but were referenced in the allegations of the Charge. The EEOC issued a Right to Sue letter on August 13, 2012 stating that it terminated processing of the Charge. (Ripple Dep. Exh. 43.) Ripple filed a *pro se* Complaint with this Court solely against Olympic on November 8, 2012. (Doc. 1.) On November 16, 2012, this Court entered an Order finding Ripple's Complaint deficient and directed Ripple to file an Amended Complaint within fifteen days of the Order. (Doc. 8.) On January 17, 2013, and after having been granted an enlargement of time to do so (Doc. 11), Ripple filed his Amended Complaint against all of the Defendants. (Doc. 12.) Defendants filed their Answer with Affirmative Defenses on April 1, 2013. (Doc. 20.) The Court entered its Scheduling Order on April 29, 2013 (Doc. 25) which the Court amended on July 25, 2013. (Doc. 28.) Fact discovery is completed and closed and the case is ripe for a dispositive motion. Defendants have filed a Motion for Summary Judgment and now file this Brief in Support.

---

[1] Although the Charge was processed and investigated by the EEOC, it was dually filed with the PHRA.

### III.     STATEMENT OF FACTS

#### A.     Olympic Hired Ripple as a Maintenance Worker and he Stated that he was not Disabled and did not Require any Accommodations.

Olympic hired Ripple as a maintenance worker in its Chambersburg steel processing facility in or about March, 2006.  (Ripple Dep. pp. 35:21-37:12.)  His job was to perform preventative maintenance and repairs on various machines.  (Ripple Dep. pp. 39:12-41:1.) Ripple worked first shift (7:00 a.m. to 3:00 p.m.) until approximately the last three months of his employment, which ended in November, 2011.   (Ripple Dep. pp. 37:16-18; 41:12-17.)  He reported to Jones for the bulk of his time on first shift.  (Ripple Dep. p. 44:2-10.)

Upon completing his probationary period, Ripple executed a Post Employment Self-Identification Form for Veterans and Individuals with a Disability. (Ripple Dep. Exh 3.)  The form contained questions as to whether Ripple was an individual with a disability and if he required any reasonable accommodations to perform his job duties.  To both questions Ripple answered "No".  (Ripple Dep. Exh. 3; Ripple Dep. pp. 38:12-39:7.)

#### B.     Ripple Has a Stutter that Did Not Affect his Ability to do his Job or Major Life Activities.

Ripple testified that he has had a stutter all his life.  (Ripple Dep. pp. 20:16-17; 130:23.) He does not currently take any medications or receive any therapy for the stutter.  (Ripple Dep. pp. 20:23-21:16.)  Ripple acknowledged that he is sensitive about his stutter.  (Ripple Dep. pp. 130:23-24; 160:22-161:4.)[2]

Ripple portrayed himself in his Amended Complaint and deposition as a "highly skilled" mechanic.  (Ripple Dep. p. 56:17-19; Ripple Dep. Exh. 4, ¶9.)  Ripple admitted that his stutter

---

[2] Ripple testified that he filed an EEOC Charge against a previous employer, Empire Kosher, alleging that the company harassed him, denied him a promotion, forced him to purchase a pair of freezer pants and ultimately terminated him because of his speech impediment.  (Ripple Dep. pp. 26:13-32:20; Ripple Dep. Exh. 2.)  Ripple said he did not pursue the Charge and filed it only to "make a point" that he should not be subjected to alleged discrimination because of his stutter.  (Ripple Dep. pp. 32:23-33:6.)  Ripple acknowledged that he filed this case to make a similar "point".  (Ripple Dep. p. 33:18.)

did not impede his job performance at Olympic.  (Ripple Dep. pp. 57:13-15; 58:16-22.)  He was able to speak to the machine operators, use the telephone and verbally warn workers about potential dangers.  (Ripple Dep. pp. 59:4-60:13.)  Ripple admitted further that his stutter did not affect his ability to take care of himself, perform manual tasks, walk, see, hear, breathe and learn. (Ripple Dep. pp. 61:14-62:6.)

### C.    Ripple Received and Understood Olympic's Employment Policies.

Ripple received Olympic's detailed Standards of Conduct which prohibit sexual and other unlawful workplace harassment.   (Ripple Dep. Exhs. 8-9.)   Ripple testified that he understood that policy, which specifically prohibits harassment based on an alleged disability among other protected classes.  (Ripple Dep. p. 69:12; Ripple Dep. Exh. 8.)  That policy required employees to promptly report alleged unlawful harassment and stated:

> Any employee who believes he or she has been the subject of sexual or other unlawful harassment must report the alleged act within 48 hours to his/her immediate supervisor.  In the event that the supervisor is the harasser, employees are required to report the incident to the General Manager, Regional Vice President or Corporate Human Resources Director or Manager.  The Company requires all sexual and other unlawful harassment claims be reported even though the harasser is a co-worker, a supervisor or a high level manager.  Failure to report harassment incidents will be viewed as a violation of Company policy and may warrant disciplinary action.

(Ripple Dep. Exh. 8.)

### D.    Ripple was Chronically Absent, Tardy and Exhibited Other Performance Deficiencies.

Ripple was tardy 31 times from April 3, 2006-September 29, 2006.  (Ripple Dep. Exh. 18.)  Between January, 2007 and August, 2008, Ripple was late another 81 times and absent 17 work days. (Ripple Dep. Exh. 28.)   Ripple received multiple written warnings, a one day suspension and a final warning for tardiness and for otherwise violating Olympic's attendance policy.  (Ripple Dep. Exhs. 27-28, 31-32.)  Ripple's lack of dependability, tardiness and poor

attendance were recurring themes in his annual performance appraisals.  (Ripple Dep. Exhs. 22, 24-26.)  At no time did Ripple raise any alleged disability as a reason for these or any other problems.  (*Id*.)  Ripple admitted at his deposition that his poor attendance may have factored into Olympic's decisions concerning his compensation.  (Ripple Dep. p. 19:19-21.)

Ripple's performance issues were not limited to attendance.  Ripple received a written warning for repeatedly sleeping in a bathroom stall during work hours.  (Ripple Dep. Exh. 29.) He also received written warnings for failing to follow instructions about reporting a workplace incident and for causing property damage at Olympic.  (Ripple Dep. Exhs. 30, 33.)

**E.**     **Ripple Alleged that he Suffered Harassment While at Olympic but Admitted that he has no Proof that it was Related to his Stutter.**

In his Amended Complaint and at his deposition, Ripple asserted that he suffered various incidents of harassment during his time at Olympic.  However, he made it clear that a "hostile environment" did not exist until the spring and summer of 2011.  (Ripple Dep. p. 125:15-18.)  In terms of specifics, Ripple testified that unidentified people pounded on the door to the bathroom stall on approximately five separate occasions while he used the facilities at Olympic.  (Ripple Dep. p. 73:17-25.)  Ripple acknowledged that he has no idea if these alleged incidents occurred because of his stutter.  (Ripple Dep. p. 76:3-6.)

Ripple testified that an unidentified person poured water on him on a single occasion while he was in a bathroom stall.  (Ripple Dep. pp. 133:22-134:10.)  Ripple said he was not physically threatened by the water nor did he connect it to his stutter.  (Ripple Dep. pp. 135:2-136:7.)

Ripple testified that an unidentified person took a lock off a toolbox Olympic owned and provided for his use and removed the tools.  (Ripple Dep. pp. 79:23-80:3; 80:17-19.)  This occurred once (Ripple Dep. p. 81:6) and Ripple said he has no evidence that the incident had

anything to do with his stutter (Ripple Dep. p. 84:4-7.)   Ripple acknowledged that Olympic replaced the tools after he reported the incident and it did not impact his ability to do his job. (Ripple Dep. p.  83:22-84:3.)

Ripple did not direct any specific complaints of harassment at Davis, a shipping supervisor or Neil, the operations manager.  (Davis Dep. p. 4:11-12; Neil Dep. p. 7:19-21; Ripple Dep. pp. 127:1-6; 131:23-25.)   Ripple did accuse Schenzel, the human resources manager (Schenzel Dep. p. 7:17-19) of being condescending.   (Ripple Dep. p. 130:12-14.) Ripple acknowledged that Schenzel did not mention the stutter when they conversed.  (Ripple Dep. p. 130:10-11.)

The remainder of Ripple's complaints were related in some way to his supervisor, Jones, though Ripple testified that he was able to do his job efficiently and effectively despite the way Jones allegedly treated him.   (Ripple Dep. pp. 57:24-25; 58:1-2.)   Ripple said that Jones demonstrated a bad attitude and ridiculed him somewhere between 5-10 times during his employment.   (Ripple Dep. pp. 76:9-10, 22-24; 77:19-25.)   But according to Ripple, these incidents concerned repairs and maintenance work and Jones never referenced his stutter. (Ripple Dep. p. 78:10-18.)

Ripple accused Jones of depriving him use of a walkie-talkie radio while at Olympic. But in fact, according to Ripple, Jones asked him to minimize use of the radio so as not to tie up the frequency and to use the telephone instead.  (Ripple Dep. pp. 137:1-20; 138:21-23; 139:3-8.) Ripple said he had no evidence that his stutter had anything to do with Jones' instructions concerning the radio.  (Ripple Dep. p. 139:12-17.)  Indeed, Ripple carried a radio and was heard using the radio.  (Neil Dep. pp. 39:10-41:6.)  Jones had no difficulty in communicating with

Ripple on the radio.  (Jones Dep. p. 104:12-19.)  Ripple himself is not surprised that others heard him on the radio.  (Ripple Dep. p. 140:17-20.)

According to Ripple, a gentleman by the name of "Paul" who works for an outside vendor, Reliance Crane, told him of a conversation he had with Jones where Jones ostensibly said that Paul should not worry about what Ripple has to say because Ripple is "kind of slow". (Ripple Dep. p. 143:18-23.)  Ripple testified that he does not know if this comment referred to the speed of his work or intelligence.  (Ripple Dep. pp. 143:24-25-144:1-5.)

Finally, Ripple testified that on July 12, 2011, Davis told him about a cell phone picture Jones allegedly showed him which supposedly depicted Ripple sleeping in a bathroom stall on the toilet at Olympic.  (Ripple Dep. pp. 145:2-146:23.)  Ripple never saw the picture.  (Ripple Dep. p. 153:10-11.)  He has no idea if the picture was related to the stutter.  (Ripple Dep. p. 153:7-9.)  In fact, he does not even know if the picture ever existed.  (Ripple Dep. p. 153:12-15.)

     **F.**     **Olympic Rescinded Ripple's Termination for Violation of its Attendance Policy, Investigated his Complaint and Granted his Request for FMLA Leave.**

Ripple testified that news of the cell phone picture upset him and that he intended to quit. (Ripple Dep. pp. 150:1-5; 154:1-7.)  When Ripple did not call in or otherwise report for work the next day, he received a phone call from Schenzel inquiring of his whereabouts.  (Ripple Dep. p. 155:16-21.)  At the time, Ripple had accumulated so many points under Olympic's attendance point system (Ripple Dep. Exh. 14) that a "no call no show" absence would have resulted in automatic termination.  (Schenzel Dep. p. 12:3-20.)

Ripple told Schenzel about the cell phone picture he heard about the day before and his belief that he was being "singled out" by Jones.  (Schenzel Dep. p. 12:18-25.)  Ripple then, for the first time, complained to Schenzel about some of the incidents listed above. (Ripple Dep. pp. 156:21-24-157:4.)  Schenzel asked Ripple why he did not mention them before.  (Schenzel Dep.

pp. 12:25-13:13.)  Ripple replied that he "didn't think it mattered."  (Schenzel Dep. p. 13:13-14.)

Ripple did not tell Schenzel that the alleged incidents were related to his stutter.  (Ripple Dep. p.

159:17-20.)  Both Ripple and Schenzel said they would separately speak to Neil.  (Ripple Dep. p.

157:20-24.)

Ripple did not hesitate to bring workplace concerns to Neil's attention but he never

accused anyone of unlawful harassment.  Ripple testified that he had previously complained to

Neil about the unknown bathroom door bangers, Jones' performance-related ridicule and the

anonymous toolbox pilfering, but he has no recollection if he told Neil that his stutter was the

reason behind the incidents.  (Ripple Dep. pp. 83:6-84:18.)  Ripple testified that he is "not sure"

if he made any written complaint of workplace harassment but said he would not be surprised if

Olympic has no record of such a complaint.  (Ripple Dep. pp. 115:18-25; 116:1-3.)  Ripple did

recall informing Neil that someone allegedly poured water on him in the bathroom and Jones'

instructions concerning the radio, but he did not tell Neil that these matters had anything to do

with his stutter.  (Ripple Dep. pp. 134:25-135:1-4; 140:21-141:17.)

Ripple called Neil to discuss the cell phone picture after his conversation with Schenzel.

(Ripple Dep. pp. 158:23; 159:1-2; Neil Dep. p. 15:10-19.)  Ripple did not tell Neil that the

picture concerned his stutter.  (Ripple Dep. p. 164:10-15.)  Neil promised to investigate the

picture.  (Ripple Dep. p. 160:7-9; Neil Dep. p. 38:4.)  Neil also removed the points accrued from

the "no call no show" absence, which allowed Ripple to keep his job.  (Neil Dep. pp. 16:9-15;

37:20-38:1.)  At Ripple's request, Neil allowed Ripple to stay off work until the following

Monday, July 18, 2011.  (Neil Dep. p. 16:15-22.)  Neil assured Ripple that he was a "valued

employee" and that "I don't want you to leave, I want you to be here."  (Neil Dep. p. 38:5-7.)

Neil was unable to uncover who took the picture during his investigation.  (Neil Dep. p. 32:20-22.)[3]

Ripple obtained medical care for anxiety and returned to work on July 18, 2011.  (Ripple Dep. pp. 161:12-13; 164:5; 167:5.)   He worked until July 25, 2011, when he requested and Olympic granted him FMLA leave.  (Ripple Dep. p. 167:11-18; Ripple Dep. Exh. 36.)   In the intervening week, Ripple was not "harassed" by Jones or anyone else at Olympic.  (Ripple Dep. p. 168:1-3.)

**G.** **Olympic Granted Ripple's Request for a Shift Change Upon his Return from FMLA Leave and no Further Incidents of "Harassment" Occurred, but Ripple Still Voluntarily Resigned.**

Ripple returned to work on September 13, 2011 at the conclusion of his FMLA leave. (Ripple Dep. Exh. 38.)[4]   Ripple requested a transfer to third shift so he did not have to work with Jones.  (Ripple Dep. p. 187:16-25.)   Olympic granted this request and Ripple returned to work on September 13th on the third shift.  (Ripple Dep. p. 188:4.)   After moving to the third shift, Ripple had maybe five minutes' interaction with Jones during the workday when he came off work and Jones came on.   (Ripple Dep. p. 188:18-20.)   Jones did not "harass" him during their brief encounters.  (Ripple Dep. p. 189:4.)   In fact, no one harassed Ripple at all after he returned from FMLA leave.  (Ripple Dep. pp. 189:7; 193:6-9.)

Ripple submitted his notice of resignation on November 11, 2011.  (Ripple Dep. Exh. 47.)   He was on vacation and out of communication with Olympic for the two weeks

---

[3] Though not relevant to this Motion, in his investigation, Neil learned that Jones had previously come into possession of a cell phone picture of someone in a bathroom stall at Olympic.  (Neil Dep. p. 8:9-21; Jones Dep. p. 62:21-25.)  Jones did not know where the picture came from.  (Jones Dep. p. 63:1-2.)  When he received the picture, Jones asked Schenzel what to do about it.  (Jones Dep. p. 64:12-20.)  Schenzel told Jones to get rid of it.  (Jones Dep. p. 66:16-17; Schenzel Dep. p. 36:22.)  It is undisputed that Ripple never saw the picture.  (Ripple Dep. p. 153:10-11.)  Neil verbally reprimanded Jones for possessing the picture and for not telling him about it.  (Neil Dep. pp. 8:9-21; 9:10-14.)

[4] Ripple filed his EEOC Charge against Olympic while still employed and on FMLA leave.  (Ripple Dep. Exh. 40.)

immediately before.  (Ripple Dep. pp. 191:1-9; 193:1-5.)  When asked what prompted him to resign since by his own admission he worked without incident since returning from FMLA two months earlier, Ripple pointed to what allegedly occurred over the summer.  (Ripple Dep. p. 193:6-12.)

## IV.     STATEMENT OF QUESTIONS INVOLVED

1.     Whether summary judgment should be granted on Ripple's ADA and PHRA claims where the undisputed facts show that: (a) Ripple was not "a qualified individual with a disability" as defined in the statutes; (b) he was not subjected to harassment based on his alleged disability; (c) he was not subjected to harassment sufficiently severe or pervasive that altered the terms and conditions of his employment and created an abusive working environment; and (d) he failed to promptly report the alleged harassment.  Suggested answer:  Yes.

2.     Whether summary judgment should be granted on Ripple's constructive discharge claim where the undisputed facts show that he was not subjected to unlawful discrimination or misconduct so intolerable that a reasonable person would have felt compelled to resign. Suggested answer:  Yes.

3.     Whether summary judgment should be granted on Ripple's intentional infliction of emotional distress claim where: (a) Ripple's claim is based on the same allegations of discrimination as in his PHRA discrimination claim; and (b) the undisputed facts show that during Ripple's employment with Olympic, he was not subjected to extreme and outrageous conduct beyond all possible bounds of decency and regarded as atrocious and utterly intolerable in a civilized society.  Suggested answer:  Yes.

## V.     ARGUMENT

### A.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986).  In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party.  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538, 553 (1986).  Summary

judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party...." *Matsushita*, 475 U.S. at 586-87, 106 S. Ct. at 1356, 89 L. Ed.2d at 552 (citations omitted).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed.2d 202 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Liberty Lobby*, 477 U.S. at 248, 106 S. Ct. at 2510).  "If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50, 106 S. Ct. at 2511, 91 L. Ed.2d at 212 (citations omitted).

"The non-moving party cannot rest on mere pleadings or allegations," *El v. Southeastern Pennsylvania Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007), but "must set forth specific facts showing that there is a genuine issue for trial."  *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  Allegations made without evidentiary support may be disregarded.  *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).  Under these controlling authorities, Ripple's claims cannot survive summary judgment.

**B.**     **Defendants are Entitled to Summary Judgment on Plaintiff's ADA and PHRA Disability Discrimination Claims.**

**1.**     **The Analyses of Plaintiff's Claims Under the ADA and PHRA are the same.**

Ripple alleges in his Amended Complaint claims of disability discrimination against Defendant Olympic under the ADA *42 U.S.C. §§ 12101-12213* in Count I, and against all Defendants under the PHRA *43 P.S. §§ 951-963* in Count IV.  Both claims are based on a hostile work environment theory and upon the same allegations.[5]  The proper analyses of these claims are identical under the ADA and the PHRA.  *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 519 (E.D. Pa. 2012.)  See also *Sterling v. McKesson Automation, Inc.*, 2006 U.S. Dist LEXIS 69159 (W.D. Pa) (citations omitted); *Imler v. Hollidaysburg Am. Legion Ambulance Serv.*, 731 A.2d 169, 173-174 (Pa. Super. 1999.)  Accordingly, Ripple's ADA claim should be analyzed coextensively with his PHRA claim.

**2.**     **The Elements of a *Prima Facie* Case of Hostile Work Environment Discrimination Under the ADA and PHRA**

To survive summary judgment on his hostile work environment disability discrimination claims under the ADA and PHRA, Ripple must establish a prima facie case by showing each of the following: (1) he is a qualified individual with a disability under the ADA; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment **_and_** create an abusive working environment; **_and_** (5) the employer knew or should have known of the harassment **_and_** failed to take prompt, effective, remedial action. *See*

---

[5] In paragraph  42e of Ripple's Amended Complaint, he alleges he "suffered retaliation as a result of complaining about certain terms and conditions of work and employment."  However, Ripple does not sufficiently allege a claim of retaliation under either the ADA or PHRA.  Ripple identified no protected conduct in his Amended Complaint and by his own admission, as stated above, Ripple did not mention or complain to any Olympic manager that any of the incidents he characterizes as harassment were related to his stutter or were otherwise in violation of the law.

*Koller*, 850 F. Supp. 2d at 515 (citing *Walton v. Mental Health Association of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)); *See also Allen v. Verizon Pa., Inc.*, 418 F. Supp. 2d 617, 631 (M.D. Pa. 2005.)  Viewing the undisputed record evidence in this case, Ripple cannot meet multiple prongs of this test and as such fails to establish a *prima facie* claim of hostile work environment disability discrimination. Accordingly, Defendants are entitled to summary judgment on Ripple's ADA and PHRA claims.

### 3.    Ripple is not a Qualified Individual with a Disability under the ADA or PHRA.

To establish that he is a qualified individual with a disability under the ADA and PHRA, Plaintiff must first establish that he "has a physical or mental impairment that substantially limits one or more major life activities." *42 U.S.C. § 12102(2)(A);  Jeffrey v. Ashcroft*, 285 F. Supp. 2d 583 (M.D. Pa. 2003.)  "Not every impairment will constitute a disability within the meaning of this section." *29 C.F.R. § 1630.2(j)(1)(ii).*  Ripple alleges in his Amended Complaint that he has a disability within the meaning of the ADA, a severe stutter. (Amended Complaint ¶¶ 8, 39.)

A stutter or speech impediment, standing alone, does not constitute a protected disability under the ADA. *See Sterling v. McKesson Automation, Inc.*, 2006 U.S. Dist LEXIS 69159 (W.D. Pa) (no evidence that the plaintiff's stutter substantially limited one or more of his major life activities); *Bess v. County of Cumberland,* 2011 U.S. Dist LEXIS 81032 (E.D. N.C.) (rejecting Plaintiff's conclusory allegation that 'stuttering is a disability protected by the [ADA]' where complaint contained no allegations demonstrating that plaintiff's stutter substantially limited any major life activity, such as working or communicating); *Bates v. Wis-Dept. of Workforce Dev.,* 636 F. Supp. 2d 797, 809 (W.D. Wis. 2009) (claimant's stutter did not qualify as ADA protected disability given the complete lack of evidence that plaintiff's stutter substantially limited any major life activity) *aff'd*, 375 Fed. Appx. 633 (7th Cir. 2010.)

"An impairment is a disability if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *29 C.F.R. § 1630.2(j)(1)(ii).*   The ADA regulations list examples of major life activities such as caring for oneself, performing manual tasks, walking, seeing, speaking, hearing, breathing, learning, communicating, thinking, concentrating and working. *29 C.F.R. § 1630.2(i).*  As is clear from the record, and indeed from Ripple's own testimony, his stutter is not a disability within the meaning of the ADA and PHRA because it is not an impairment that substantially limits him in a major life activity.

Here, Ripple merely alleges that his stutter "affects his speech." Amended  Complaint ¶8. There is absolutely no evidence in the record establishing that Ripple's stutter substantially impaired any of his major life activities.[6]  Indeed, Ripple testified in his deposition that his stutter did not substantially limit him in his work at Olympic Steel or in any of the following activities - -verbally communicating with others (including over the telephone), caring for himself, performing manual tasks, walking, seeing, hearing, breathing and learning. (Ripple Dep. pp. 57:13; 58:16-22; 59:4-60:13, 61:14-62:6.)

It is particularly notable that Ripple acknowledged that his stutter did not limit him in performing his job in a "highly competent manner" nor did it limit his ability to communicate with co-workers and supervisors in the performance of his maintenance duties.   He acknowledged that he was fully capable of verbally warning a co-worker about a risk of danger or verbally communicating the source of mechanical problems in the case of an equipment failure. (Ripple Dep. pp. 59:4-20.)  When specifically asked how his stutter limited him in a major life activity, he merely speculated as to his competence if he were a 911 Operator. (Ripple

---

[6] Significantly, Ripple does not allege in his Amended Complaint that his stutter substantially limits a major life activity, a necessary element to state a claim under the ADA and PHRA. Rather, he alleges only that he "is limited in 'a major life activity.'  Amended Complaint ¶ 8.

Dep. p. 49:14-18.)  Ripple was not a 911 Operator at Olympic Steel or anywhere else. (Ripple Dep. p. 49:19-23.)

Ripple likewise has provided no medical evidence in the record which establishes that he was substantially limited in a major life activity.  Aside from Ripple's mere speculation about 911 duty and his conclusory Amended Complaint allegations, Ripple has not provided any competent evidence that could lead a reasonable factfinder to believe that his stutter substantially limits him in one or more major life activities.  On the contrary, Ripple's own deposition testimony refutes the existence of a disability.  It is clear from the record that Ripple does not regard his stutter to be substantially limiting or a disability requiring a reasonable accommodation. (Ripple Dep. pp. 37:19-39:7; Ripple Dep. Exh 3.)  Accordingly, since Ripple has failed to satisfy the first prong of his *prima facie* disability discrimination case, Defendants are entitled to summary judgment on Ripple's disability discrimination claims under the ADA and PHRA.

> **4.     There is no Evidence that any of the Isolated Incidents Ripple Characterizes as Harassment were Based on his Purported Disability or a Request for an Accommodation.**

Ripple rests his hostile work environment disability discrimination claim on certain isolated incidents he characterizes as harassment which allegedly occurred in the spring and summer of 2011.  (Ripple Dep. p. 125:15-18.)  The incidents are: 1) on approximately five separate occasions, unidentified person(s) knocked on the bathroom stall while he was inside (Ripple Dep. p.73:17-25); 2) on one occasion, he believed an unidentified person threw water on him while he was in a bathroom stall (Ripple Dep. p.p. 133:22-134:10); (3) on one occasion, an unidentified person took a lock off a Company toolbox he used and removed his tools—the tools were replaced by Olympic (Ripple Dep. pp. 79:23-80:3; 80:17-19; 81:6; 83:22-84:3); (4) on one occasion, Schenzel, the Human Resources Manager, used a condescending tone with him (Ripple

Dep. pp. 129:19-130:16); (5) on occasion, Ripple's supervisor, Jones, demonstrated a bad attitude and ridiculed him concerning equipment repairs and maintenance work (Ripple Dep. pp. 76:9-10, 22-24; 77:19-25); (6) Jones asked Ripple to minimize his use of the radio so as not to tie up the frequency and use the telephone instead (Ripple Dep. pp. 137:1-20; 138:21-23; 139:3-8); (7) Ripple was allegedly told by an outside vendor that Jones told the vendor that Ripple was "kinda slow" (Ripple Dep. p. 143:18-23); and (8) Davis told him of the existence of a cell phone picture which supposedly depicted Ripple sleeping in a bathroom stall at Olympic—Ripple never saw the picture and does not know whether it ever actually existed (Ripple Dep. pp. 145:2-146:23; 153:10-11.)

To satisfy the third prong of his prima facie case, Ripple must show that the incidents of "harassment" alleged above were due to or based on his stutter or a request for reasonable accommodation. *See Koller*, 850 F. Supp. 2d at 515 (citations omitted.)  He cannot  carry this burden.  Indeed, Ripple acknowledged in his deposition that he has <u>no evidence</u> that any of these incidents occurred because of his stutter.  (Ripple Dep. pp. 76:3-6; 78:10-18; 84:4-7; 130:10-11; 135:2-136:7; 139:12-17; 153:7-9.)   Ripple also acknowledged that he never requested any reasonable accommodation due to his stutter. (Ripple Dep. Exh. 3; Ripple Dep. p. 38:12-39:7.) He regarded himself as a highly skilled mechanic and represented that his stutter <u>did not impede his job performance</u> at Olympic. (Ripple Dep. p. 56:17-19; 57:13-15; 58:16-22; Ripple Dep. Exh. 3; Amended Complaint ¶ 9.)  For these reasons, Ripple's disability discrimination claims cannot survive summary judgment.

**5.**      **The Isolated Events that Ripple Characterizes as "Harassment" were neither Severe nor Pervasive, nor did they Alter the Conditions of his Employment.**

To satisfy the fourth prong of his hostile work environment claim, the evidence must establish that the environment would be perceived by a reasonable person as hostile and abusive

and that Ripple did, in fact, perceive it to be so. *Martin v. Allegheny Airlines, Inc.*, 126 F. Supp. 2d 809, 820 (M.D. Pa. 2000) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993).) All of the circumstances must be considered by the court in deciding whether a work environment is objectively hostile and abusive, including " 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; ***and*** whether it unreasonably interferes with an employee's work performance.'" (*Id.*) (citing *Harris*, 510 U.S. at 23.) Incidents must be more than episodic to be considered "pervasive," they must be sufficiently continuous ***and*** concerted. *Id.,* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n.1 (1998)(other citations omitted.)

The high evidentiary burden of establishing a hostile work environment is demonstrated in *Eric v. Donsco, Inc.*, 2010 U.S. Dist. LEXIS 128247 (M.D. Pa.) (analyzing hostile work environment claim in Title VII discrimination case).[7] In *Eric*, the Plaintiff alleged that he was subjected to a hostile work environment by having his lunch stolen, his radio broken, glue placed on his lock, and being called a "bitch" and a "black monkey." The court rejected the hostile work environment claim, reasoning:

> Having one's lunch stolen, one's radio broken, and/or having one's lock tampered with are acts that do not rise to the level of severity or pervasiveness to meet the second element of a hostile work environment. They are isolated events, which are neither physically threatening nor humiliating and would not reasonably interfere with work performance. Consequently, with respect to these incidents, which amount more to horseplay than anything else, Plaintiff has likewise failed to establish the second factor of a hostile work environment.

---

[7] Hostile environment claims under the ADA have been recognized and analyzed by the Third Circuit in a similar manner as hostile environment claims under Title VII. *See e.g., Walton v. Mental Health Ass'n of Southeastern Pa.*, 168 F.3d 661, 666 (3d Cir. 1999).

*Eric*, 2010 U.S. Dist. LEXIS 128247 at *17.  *Eric* demonstrates that claims of misconduct far more egregious than that which Ripple alleges fail to establish the requisite level a level of severity or pervasiveness to create a hostile work environment.

Ripple provided very little specificity about the incidents he regarded as unlawful harassment. He provided no dates, little if any detail of what specifically was said and done, and admitted to making no documentation of concerns or complaints at the time of the incidents. (Ripple Dep. pp. 115:18-25-116:1-3.)  This is significant and undermines Ripple's perceived level of severity of the incidents.

Several of the events he asserts as evidentiary support for his claims of unlawful harassment are isolated criticism by his supervisor, Jones, over work-related matters or the tone of a single conversation with Schenzel.  Neither rises to the level of conduct necessary to establish a hostile work environment.  In fact, when Ripple complained to Neil about working with Jones and requested a shift change, Neil immediately granted Ripple's request. (Ripple Dep. p. 188:4.)  The bathroom stall incidents and lock breaking are, at most, a few isolated incidents of horseplay which neither caused Ripple physical harm, altered his working conditions nor affected his work performance. (Ripple Dep. pp. 56:17-19; 57:24-25-58:1-2.)  Horseplay does not rise to the level of an unlawful hostile work environment. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998.)  Ripple's complaint about what the vendor said is riddled with hearsay and cannot be considered on summary judgment.

Ripple regards the cellphone picture as the most offensive incident and cites it as the primary reason he voluntarily resigned his employment.  However, a reasonable person would not regard this one non-physically threatening incident as creating a hostile and abusive working environment considering that Ripple never saw the picture and, to this day, does not know if it

ever existed. (Ripple Dep. p. 153:7-15.)  This single incident, more aptly characterized as teasing, is not the type of conduct sufficiently pervasive to violate the ADA and PHRA. Moreover, Olympic took steps to minimize whatever impact the picture may have had on Ripple by rescinding his termination that would have resulted from the "no call no show" absence Ripple incurred the day after learning about the picture. (Neil Dep. pp. 16:9-15; 37:20-38:1.) Accordingly, Ripple's evidence, even if true, is simply insufficient to establish the existence of severe and pervasive harassment that altered his working conditions.  This is yet another reason to grant Defendants summary judgment.

      **6.**      **Ripple never Complained About Harassment due to his Stutter; Nevertheless Defendants Took Prompt Action to Accommodate him.**

Ripple also cannot satisfy the fifth prong of his prima facie hostile work environment claim and thus summary judgment is appropriate on this basis as well.  Ripple did not identify himself as disabled on his application and never requested a specific accommodation as a result of his stutter. (Ripple Dep. pp. 38:12-39:7; Ripple Dep. Exh. 3.)  Ripple never accused anyone at Olympic of unlawful harassment in violation of Company policy.  Olympic's policy prohibiting discrimination in the workplace required Ripple to promptly report incidents of unlawful harassment, which he never did. (Ripple Dep. Exh. 8.)  When asked why he did not report the incidents he now alleges to be harassment, Ripple said he did not think it mattered.  (Schenzel Dep. p. 13:13-14.)  As a matter of law, it most certainly did matter.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-808.

Nevertheless, on the few isolated occasions Ripple brought a workplace concern to the attention of Neil, Neil took immediate action to address them.  As discussed, Ripple had chronic attendance problems and "pointed out."  Upon hearing of Ripple's complaint over the cellphone picture, Neil immediately rescinded Ripple's termination and investigated the incident.  Ripple

requested a medical leave of absence shortly thereafter which Olympic granted.  Upon returning

from leave, Ripple requested a transfer to the third shift and Neil immediately granted it.  There

is no evidence in the record which even remotely establishes that Defendants knew or should

have known that Ripple was harassed due to his stutter.  Accordingly, Ripple's hostile work

environment claims fail on this ground as well.

C.      **Ripple's Constructive Discharge Claim Under the ADA and PHRA Fail as a Matter of Law.**

Ripple bases his constructive discharge claim on the same evidence as his hostile work

environment claims. He asserts in Count II of his Amended Complaint that because his work

environment was hostile "on account of his stuttering," he felt compelled to resign.  As discussed

below and previously herein, this claim also cannot survive summary judgment.

As with Ripple's hostile work environment disability discrimination claims under the

ADA and PHRA, the same analysis applies to his constructive discharge claims. *See Martin v.*

*Allegheny Airlines, Inc*., 126 F. Supp. 2d 809, 821 (M.D. Pa. 2000); *Westfall v. Vanguard Group,*

*Inc.*, No. 06-4320, 2007 U.S. Dist. LEXIS 41777, *6, (E.D.P.A.) (citing *Kelly v. Drexel Univ.*, 94

F.3d 102, 105 (3d Cir. 1996)).   For Ripple's constructive discharge claim to survive summary

judgment, he must establish that Defendants "knowingly permitted a condition so intolerable a

reasonable person would have felt compelled to resign.*" Westfall* 2007 U.S. Dist. LEXIS 41777

at *14 (citing *Spangle v. Valley Forge Sewer Auth.*, 839 F.2d 171, 173 (3d Cir. 1988) and

*Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 975 (3d Cir. 1998)); *See also Martin, 126 F.*

*Supp. 2d at 821.; Colwell v. Rite Aid Corp.*, 602 F.3d 495, (3d Cir. 2010.)  "The law does not

permit an employee's subjective perceptions to govern a claim of constructive discharge. Every

job has its frustrations, challenges and disappointments; these inhere in the nature of work."

*Gray v. York Newspapers, Inc.*, 957 F.2d 1070 (3d Cir. 1992) (citing *Bristow v. Daily Press, Inc.*,

770 F.3d 1251 (4th Cir. 1985), *cert. denied,* 475 U.S. 1082, 106 S. Ct. 1461, 89 L. Ed. 2d 718 (1986)).  Furthermore, employees are not "guaranteed a working environment free of stress.  The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred.  They cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting." (*Id.*)

Ripple's claims amount to precisely the type of claim the Third Circuit sought to exclude in *Gray*: an imagined workplace grievance, brought to court following the voluntary resignation of a plaintiff with a history of initiating lawsuits to "teach lessons" to former employers to assuage his imagined wrongs.  (Ripple Dep. p. 33:4-18.)

Constructive discharge claims were rejected in other cases with far more egregious facts than those Ripple alleges here.  In *Colwell*, an employee suffered from a bona fide disability under the ADA and PHRA-- blindness in one eye.  *Colwell*, 602 F.3d at 489. This visual impairment prevented her from driving at night, although she was frequently scheduled to work shifts that required her to commute after the sun had set.  (*Id.*)  She requested a shift change which was denied, and was thus forced to depend on family members to get her to and from work when she couldn't drive safely.  (*Id.*)  The employee was additionally called "slow," was isolated from other employees, and was not permitted to perform jobs others on the store floor were permitted to perform.  The employee resigned her position, and brought suit claiming she was constructively discharged.  (*Id.*) at 500.

The Court granted summary judgment dismissing the plaintiff's constructive discharge claim, and the Third Circuit affirmed, noting that none of the of the objective factors for constructive discharge were present.  *Colwell* at 503.  The court specifically noted that that an employee's "subjective perceptions" do not govern a claim of constructive discharge, and stated

that the plaintiff's "*ipse dixit*" assertions that it was inconvenient for her family to shuttle her to and from work are too vague to support a conclusion that she was compelled to resign." (*Id.*) The court therefore found that no reasonable juror could find the workplace "so unbearable that a reasonable person would have felt compelled to resign." (*Id.*)

Ripple's claims fall even shorter of the mark than the *Colwell* plaintiff. Ripple has established no facts that he was threatened with discharge, urged to quit, had a reduction in pay or suffered any adverse action taken against him, nor has he established that any of these actions were at all related to his purported "disability." Instead, Ripple voluntarily left his position, immediately following a restful vacation, after receiving his requested shift change and – by his own testimony – months after the last incident he incorrectly characterized as unlawful harassment. For the reasons discussed above, the undisputed record evidence establishes that Ripple's work environment was neither hostile or abusive. As such, a reasonable person in his position would not have been compelled to resign. *See Martin,* 126 F. Supp. 2d at 821(granting summary judgment on employee's constructive discharge after finding no hostile work environment in analysis of ADA claim) Accordingly, summary judgment is also appropriate on Ripple's constructive discharge claim.

> **D.** **Defendants are Entitled to Summary Judgment on Ripple's Intentional Infliction of Emotional Distress Claim.**

> **1.** **Plaintiff's Claim for Intentional Infliction of Emotional Distress is Preempted by the PHRA.**

Under Pennsylvania law, claims of intentional infliction of emotional distress are preempted by the PHRA if they are based upon the same allegations of discrimination in the PHRA claim. *Ginsburg v. Aria Health Physician Servs.,* No. 12-1140, 2012 U.S. Dist. LEXIS 124243 at *26 (E.D. Pa. Aug. 31, 2012); *See also Belverena v. Cent. Parking Sys., Inc.*, No. 05-4364, 2005 U.S. Dist. LEXIS 25911, at *6-7 (E.D. Pa. Oct. 31, 2005.) The claims are preempted

unless the alleged conduct was "egregious or outrageous" or based upon a separate set of facts. *Belverena v. Cent. Parking Sys.,* 2005 U.S. Dist. LEXIS 25911 at *6.

Here, Ripple's emotional distress claim is based on the same set of facts and record evidence as his hostile work environment disability discrimination claim under the PHRA. As discussed herein, the incidents Ripple characterize as unlawful harassment are far from egregious or outrageous, but rather mostly ordinary workplace horseplay.  By Ripple's own admission, none of these incidents were connected to his stutter.  Ripple cannot even identify anyone, including any of the Defendants, responsible for the bathroom stall activity or the broken lock. On these grounds alone, Ripple's emotional distress claim must be dismissed on summary judgment.

Notwithstanding that Ripple's emotional distress  claim is pre-empted by the PHRA, he cannot establish the claim under Pennsylvania law.  That is because "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). To show extreme and outrageous behavior, a plaintiff must show that "the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Ginsburg*, 2012 U.S. Dist. LEXIS 124243 at *26 (citing *Hoy v. Angelone*, 554 Pa. 134 (1998)). Recovery for intentional infliction of emotional distress  has been only allowed in "very egregious cases," such as concealing a child's death and withholding the body from the children's parents. *Hoy*, 456 Pa. Super at 610 (citing *Papeives v. Kelly*, 437 Pa. 373 (1970)).  Less shocking and offensive conduct will be found not to be extreme or outrageous.  (*Id*.);  See also *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance*

*Co.*, 494 Pa. 501 (insurance company's alleged bad faith failure to honor a claim does not rise to the level of extreme or outrageous conduct);   *Forster v. Manchester*, 410 Pa. 192 (1963) (not outrageous to follow an accident victim conducting surveillance to determine the extent of the injury); *Mullen v. Suchko*, 279 Pa. Super. 499 (1980) (broken promise of financial support from lover not extreme and outrageous.)

The undisputed record evidence as discussed herein, as a matter of law, does not establish that Ripple was subjected the type of rare extreme and outrageous conduct required to support a claim of intentional infliction of emotional distress.   Accordingly, summary judgment is also appropriate on Count III of Ripple's Amended Complaint.

## VI.      CONCLUSION

Summary judgment on Ripple's entire Amended Complaint is appropriate and justified. Ripple is not a qualified individual with a disability.   He cannot connect any alleged illegal conduct on the part of Defendants to his non-existent disability.   Ripple, at best, experienced incidents of horseplay, not severe and persistent workplace harassment that altered the terms of his employment.   Ripple did not complain of illegal harassment.   Ripple resigned on his own accord despite Olympic's efforts to accommodate him including its decisions to rescind his well-earned termination.   The evidence is undisputed and overwhelming.    Judgment should be entered in favor of Defendants as a matter of law and Ripple's claims dismissed with prejudice.

Respectfully submitted,

**BENESCH FRIEDLANDER
 COPLAN & ARONOFF LLP**

    Steven M. Moss, Esq.
    I.D. No. OH 55997
    Robert A. Zimmerman, Esq.
    I.D. No. OH 55478
    200 Public Square, Suite 2300
    Cleveland, Ohio 44114-2309

**McNEES WALLACE & NURICK LLC**

By:    */s/Elizabeth A. Maguschak, Esq.*
    Elizabeth A. Maguschak, Esq.
    I.D. No. PA 39853
    100 Pine St., P.O. Box 1166
    Harrisburg, PA 17108

Dated:  October 3, 2013

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this date a copy of the foregoing Brief in Support of Defendants' Motion for Summary Judgment was served by the Court's electronic filing system upon the following:

Don Bailey, Esquire
4311 N. Sixth St.
Harrisburg, PA 17110

*Attorney for Plaintiff*

By:    */s/Elizabeth A. Maguschak, Esq.*
Elizabeth A. Maguschak, Esq.
I.D. No. PA 39853

Dated:  October 3, 2013