# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE RIPPLE | : | CV NO. 1:CV-12-2234 |
| | : | (Judge Caldwell) |
| Plaintiff | : | (Mag. Judge Blewitt) |
| | : | |
| VS. | : | |
| | : | |
| OLYMPIC STEEL INC., et al. | : | |
| Defendants | : | JURY TRIAL DEMANDED |
| | : | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT

**I.      BACKGROUND INTRODUCTION**

Plaintiffs incorporate herein by reference their *Counterstatements of Material Facts*, and the detailed *Depositions, Exhibits, and Declaration* which are referenced extensively in the Counterstatement and herein. This Brief is in Opposition to Defendants' Motion for Summary Judgment that was filed on October 3, 2013 (*ECF 33-34*).

**II.     COUNTERSTATEMENT OF THE FACTS**

Plaintiff Ripple is a highly skilled maintenance mechanic who was employed by defendant Olympic Steel Inc. beginning as a probationary employee on or about April 2006-September 2006. (*Declaration ¶'s 1-2) and (CSMF ¶'s 17-18*). On or about the spring and summer of 2011 ripple suffered a number of hostile work environment incidents that began to have an increasingly negative cumulative effect on his emotional well-being. *(See Plaintiff's Exhibit A Medical Records from Sun Pointe Health, Exhibit B Dr. Schaeffer correspondences)*. Wayne Ripple's stutter, which is immediately noticeable when communicating with him, is pronounced and severe; defendants deny that the plaintiff's stuttering is noticeable. (*See Defendants Answer*

*to Amended Complaint (ECF 20, ¶11).* However, his stutter does not negatively affect his skills or ability as a maintenance mechanic. (*CSMF ¶7, 20).*

Defendant Jones was Wayne's immediate supervisor. Wayne experienced adverse mistreatment including ridicule and harassment at Jones hands and by his colleagues at work who more or less took a cue from Jones in their mistreatment of Ripple. When Ripple attempted to use the Olympic restroom commode stalls he was often harassed by other employees who would pound on the bathroom stall he was using and sometimes cold water would be thrown on him while he was in the stall relieving himself. This was known to his supervisors and the defendants who took no action to prevent it. *(See Declaration of Plaintiff ¶'s  5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20).* All other maintenance employees were permitted to use the intra-plant radios to communicate except for Wayne Ripple who was expressly ordered by Jones not to use the devices. Ripple alleges this was because of his stutter and resulted in great embarrassment and humiliation to him because it was known to everyone. *(CSMF ¶'s 9, 10, 11, 12, 13, 38, 39, 40, 41, 53, 54, 56, 61-64.)*

On or about the spring and early summer of 2011 the humiliating and degrading harassment which was occurring in the workplace at Olympic reached a level where Ripple could no longer take the anxiety and embarrassment. (*See Plaintiff's Exhibits A, B, C and D).* Ripple could no longer bear the humiliation. For example, on or about early May 2011 Ripple was talking with "Paul" from Reliance Crane who, when Wayne advised him about the "open phase" (a phrase dealing with electric power supply) on the "power track" for the 7500 Crane, told Wayne that he was not to listen to what Wayne said because Jones said that Wayne was "kinda slow". (*CSMF ¶ 7).* The plaintiff is not mentally "slow" and is quite intelligent and intellectually capable as is evidenced by his good performance as a mechanic. These particular

insults and injurious words to the vendors about plaintiff's competence and expertise was excruciatingly humiliating, painful and embarrassing. (*See Declaration of Plaintiff*).

On or about July 12, 2011 plaintiff was speaking with the defendant Davis about his disagreements with certain terms and conditions of employment, namely Olympics "point system" where the equivalent of demerits are assigned for various transgressions of company policy. (*CSMF ¶'s 17, 18 and 19.*) After Wayne had finished complaining Davis retaliated by saying "we'll bring up the picture we have of you in the bathroom". Davis described the picture as one taken of Wayne secretly while he was on the commode in one of building 1599's bathroom stalls. Davis told Wayne the picture was shown to him by Jones. Ripple was horrified upon learning that secret pictures had been taken of him while he was relieving himself in a bathroom stall while at work. He was further humiliated upon realizing that supervisors and coworkers had circulated this picture and had known about it for a considerable period of time while he was totally unaware. (*CSMF ¶'s 22, 25-31, 32, 33, 34, 9, 10, 11, 12, 13, 45, 48, 52, 53-55, 57).*

Olympic's leadership, including plant manager defendant Tom Neil, Olympic Human Resources Director defendant Chris Schenzel, and Wayne's immediate supervisor, the defendant Danny Jones, were all familiar with the picture that was taken of the plaintiff while he was in the bathroom-stall. None of these supervisors, who had a responsibility to protect Ripple, and act responsibly on his behalf, did so. (*CSMF ¶'s 9, 10, 11, 12, and 13.)*

On July 13, 2011 plaintiff went to see his doctor who ordered him to stay off work for at least two weeks. His doctor put him on medication to control depression and anxiety. He was shortly called by the defendant Schenzel who told plaintiff he was terminated but admitted that he also had known of the picture and that he "expected this". As plaintiff went to turn-in his

work related property he was called by Tom Neil who advised plaintiff that his information about the picture of him in the bathroom stall was correct but that no one would tell him (Neil) who took the picture. He also told Wayne that he wanted Wayne back at work and needed him but when Wayne presented the doctor's note indicating he was to be off until 7/25/2011, Neil told Wayne that he could only have off until 18 July or he would be fired. Wayne went back on July 18 and ended up at Chambersburg Hospital on July 19, 2011. Wayne, on doctor's orders, was told to stay away from work until September 13, 2011 and he was also prescribed a counselor in State College Pennsylvania. *(CSMF ¶'s 65, 68, and 69; Plaintiff's Exhibits A, B, C and D; Declaration of Plaintiff ¶'s 8, 9, 11, 14, 15, 16, 17, 18, 29, and 20.)*

Plaintiff was afraid to use the bathroom at work or to eat lunch there, so he would control himself so he wouldn't have to use the facilities while at Olympic but nonetheless he returned to work when he was permitted to do so by his doctor. Plaintiff transferred to the third shift to avoid the defendant Jones. Because of continued pressures, including the continuing hostile and condescending attitude and comments from Jones, along with collusive ostracism from co-workers, Ripple finally left Olympic on November 11, 2011. Plaintiff suffered retaliation as a result of complaining about certain terms and conditions of work and employment, and because he complained about the unlawful harassment he was receiving, and because he sought medical intervention.  At which time the plaintiff alleges he had no choice but to leave, and the plaintiff eventually suffered a constructive discharge. *(CSMF ¶'s 17, 18, 19, and 20).*

### III. COUNTER STATEMENT OF THE ISSUES

1. Whether summary judgment should be granted on plaintiff's ADA and PHRA claims?

   Suggested Answer No!

2. Whether summary judgment should be granted on plaintiff's constructive discharge?

   Suggested Answer No!

3. Whether summary judgment should be granted on plaintiff's intentional infliction of emotional distress claim?

   Suggested Answer No!

### IV. ARGUMENT

Applicable Standard of Review

Under the Federal Rules of Civil Procedure a party is entitled to seek summary judgment in its favor on "all or any part" of the claims that have been made. *Fed. R. Civ. P. 56(b)*. The courts are instructed that summary judgment:

> Shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

In *Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986)*, the Court articulated the familiar standard that:

> the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.
>
> *477 U.S. at 323, 106 S. Ct. at 2553*. A court may grant summary judgment so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in *Rule 56*, is satisfied. *Id.*.

Summary judgment has been characterized as a drastic remedy, because it cuts off a party's rights to a jury trial; that is why courts must resolve any doubts as to the existence of a genuine issue of material fact against the moving party. *Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)*. The drastic nature of summary judgment supports the limitation of the court's function to determining whether issues of fact exist and not resolving issues of fact, even if a preponderance of the evidence supports the moving party's contentions concerning the factually unsupported claims or defenses that it wishes to "isolate and dispose of". *Celotex, 477 U.S. at 323-24, 106 S. Ct*. at *2553*.

The papers of the movant are to be carefully scrutinized while those of the non-movant should be indulgently received. *Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074 (1976)*. The Court must disregard all evidence favorable to the moving party that a jury is not required to believe and should give credence to the evidence favoring the nonmovant and the unimpeached or uncontradicted evidence from disinterested witnesses supporting the moving party. *Reeves v. Sanderson Plumbing, 530 U.S. 133, 150-51, 120 S. Ct. 2097, 2110 (2000)*. As a further protection of the nonmoving party's right to trial, the courts must draw all inferences in favor of that party and are not to resolve any genuine credibility issues. *Ness, 660 F.2d at 519.*

Rule 56 clearly places the initial burden on the moving party to show initially how the evidentiary matter in support of the motion establishes the absence of a genuine issue concerning any material fact. *Fed. R. Civ. P. 56, Advisory Committee Notes to 56(c)*. If the moving party does not meet the initial burden of establishing the absence of a genuine issue of material fact, summary judgment must be denied before the non-moving party's response even needs to be considered. *Id.*.

If the moving party meets its initial burden of showing the evidentiary basis that establishes the absence of a genuine issue, the nonmoving party is required to go beyond the contrary allegations of their complaint and must come forward with evidence disputing the

materials relied upon by the moving party to avoid conceding the fact at issue for purposes of summary judgment. *Adickes v. Kress & Co.*, 398 U.S. 144, 160-61, 90 S. Ct. 1598, 1610 (1970). When, as in the present case, intent is an issue, the court must be cautious about granting summary judgment. *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 321 (3d. Cir. 2000).

Moreover, because issues of pretext often turn on credibility, summary judgment should not be granted when such issues arise because credibility determinations are for a jury. See *e.g. Jackson*, 826 F.2d at 236. In ruling on a Motion for Summary Judgment, this Court must review the evidence in a light most favorable to Plaintiff, to give Plaintiff the benefit of all reasonable inferences, and to resolve all doubts in favor of Plaintiff. See, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348, 1356.

**1. Plaintiffs ADA and PHRA claims**.

*"The ADA does not define "major life activities." Bolton v. Scrivner, Inc., 36 F.3d 939, 942 (10th Cir.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). The EEOC regulations, however, provide, that an individual is substantially limited in a major life activity if he is "[u]nable to perform a major life activity that the average person in the general population can perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). In relevant part, the regulations suggest considering "[t]he nature and severity of the impairment."[4] 29 C.F.R. § 1630.2(j)(2)(i). Kelly admits that he is able to walk so the question presented is whether he adduced sufficient evidence from which a fact-finder reasonably could conclude that the nature and severity of his injury significantly restricted his ability to walk as compared with an average person in the general population." Kelly v. Drexel University, 94 F. 3d 102 (3d Cir. 1996).*

Wayne Ripple's severe stuttering is unequivocally a "major life activity". Not only did it unjustifiably draw the ridicule and the demeaning treatment he received from the defendants like Schenzel who mocked him but it also resulted in Danny Jones refusing to allow Wayne to use

the intra-plant telephone because it took Wayne too long to get things out and Jones was obviously annoyed by having to listen to him. Another good example was Danny Jones telling Paul from Reliance Crane not to listen to Wayne because Wayne was "kinda slow". See, Complaint ¶16. As properly noted by the court, Wayne has exhausted his administrative remedies and received his right to sue on the ADA claim and his PHRA claims. Wayne was mistreated badly at work by a few of his colleagues and certainly by his immediate supervisor (Danny Jones) and the supervisors above him. He became an object of ridicule. When he tried to go to the bathroom unidentified others would bang on the bathroom stall. Pictures were taken of him while he was relieving himself without them knowing about it. Those pictures were circulated among Wayne supervisors and colleagues. Wayne's ADA claim is valid. It certainly impaired his communications and was a condition known to his supervisors from his date of employment. It resulted in misinterpretations of his intelligence and intellectual acuity which were neither justified nor deserved. Worse had resulted in limitations on his workplace rights to use the same equipment as others (intra-plant telephones).

The only accommodation Ripple ever sought was the patience of his supervisors. Stuttering may have been annoying, but it takes merely seconds to exercise sufficient respect to listen to what Wayne has to say. He is skilled and has sufficient knowledge and understanding of the specialized field in which he works. Defendants do not deny this. There is a jury question presented. There are significant material indicia that Wayne's stuttering was incidental to the hostility he experienced and the adverse employment actions (like the opportunity to use telephones) and interference with outside vendors while accomplishing his work (Reliance Crane).

Defendants do not address, except in the most inferential fashion, Wayne's PHRA claims. Concisely speaking these are claims which accrue against the individual defendants all of whom trafficked in the horrifically demeaning and hostile actions where Wayne's privacy was invaded by surreptitiously taking pictures of him in a bathroom stall and passing them around. Schenzel added to this hostility and embarrassment by mocking the way Wayne talked. In fact the defendants acknowledged and admitted the misconduct of Danny Jones by slapping his wrist after they ratified the misconduct of him and others by having a good laugh at the expense of Wayne's rights to privacy and to be free of a hostile work environment. *43 Pa. Cons. Stat. Ann. §§ 951 -63 et seq (the "PHRA")* prohibits such wrongdoing

What is similarly offensive is the defendants' rather oblique claim that they took prompt action to accommodate Wayne. To begin the record is totally devoid of any sincere or objective effort to accommodate. When Wayne complained strongly, the defendants, i.e., his supervisors, all of a sudden realized the cat was out of the bag particularly as to the illegal pictures that subjected Wayne to so much ridicule and admittedly Neil was almost begging him to come back. However it was too late. Wayne's Dr. had already ordered him to take leave for health reasons and the trust if any was left that Wayne had for his supervisors and for Olympic had dissipated in the smoke and fire of harassment.

**2. Wayne suffered a constructive discharge**

All of the harassment, ridicule, and invasions of Wayne's privacy combined to create a work environment consisting of distrust and fear. Wayne's Dr. recognized these problems and consequently ordered him to stay away from work. He was distraught and fearful of going into work. As is easy to understand he was totally humiliated and embarrassed when he learned of

pictures of him in a bathroom stall relieving himself had been passed around among his supervisors and some of his colleagues. The defendants attempted to assuage these problems by claiming that the pictures of Wayne in the bathroom stall were of him with all of his clothing on. Wayne has never known whether this is true or not and the search that it would make no difference. The fear of being displayed in such a manner speaks for itself. As made clear in cases like *Connors v Chrysler Financial Corp., 160 F.3d 495, (3d Cir. 1998)* and its progeny the conditions of employment must be so unacceptable, extreme, and offensive as to compel or cause a reasonable person to quit their employment. Those conditions are clearly here. When one cannot eliminate in private without being repeatedly harassed only to learn that someone has secretly taken pictures of them while in a bathroom stall to which is added the intolerable insult that those pictures are circulated by and amongst his supervisors and colleagues behind his back but in any reasonable person would be so embarrassed as to contemplate and finally effectuate a resignation. This is what Wayne suffered and this is what led to his claim of a constructive discharge.

### 3. Wayne suffered from the intentional infliction of emotional distress

The defendants suggest that Wayne's claim of intentional infliction of emotional distress was not so "egregious or outrageous" as to avoid being subsumed in Wayne's PHRA claims. Wayne's horror at discovering that he had been in a bathroom stall relieving himself while someone was taking pictures of them only to pass them around in the workplace and amongst his supervisors should not be downgraded to a level below its insidious and damaging impact on Wayne's psyche and emotions. It is more than difficult; rather it is simply impossible

to understand how the defendants can refer to this type of behavior as "mostly ordinary workplace horseplay". The proof is in the pudding.

## VI.    CONCLUSION

The record in this case is unequivocal. The factual record in this matter does not support the position that there was something legitimate about the course of defendants' conduct. Defendants should not be granted summary judgment since there are clearly disputed material facts on all material issues.

                                  Respectfully Submitted,

By:   /s/Don Bailey Esquire
        PA# 23786
        4311 N. 6th Street
        Harrisburg, Pa 17110
        717 221-9500
        717 221-9400 Fax
        AdrienneMamma6@aol.com

## CERTIFICATE OF SERVICE

I, Don Bailey, Esquire do hereby state that on this 4th day of November 2013 served the following Plaintiff's Brief in Opposition to Defendants Motion for Summary Judgment upon the following attorneys via ECF:

Steven M. Moss, Esquire
Robert Zimmerman, Esquire
200 Public Square, Suite 2300
Cleveland, Ohio  44114-2309

Elizabeth Maguschak, Esquire
100 Pine Street, P.O. Box 1166
Harrisburg, Pa 17108

Respectfully Submitted,

By:   /s/Don Bailey Esquire
      PA# 23786
      4311 N. 6th Street
      Harrisburg, Pa 17110
      717 221-9500
      717 221-9400 Fax
      AdrienneMamma6@aol.com