| | | |
|---|---|---|
| WAYNE RIPPLE, | : | CIVIL ACTION NO. **1:CV-12-2234** |
| | : | |
| Plaintiff | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| OLYMPIC STEEL, INC., *et al.*, | : | |
| | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On November 8, 2012, Plaintiff, Wayne Ripple, a resident of P.O. Box 375, Mount Union, Huntingdon County, Pennsylvania, 17066, filed, *pro se,* a 4-page typed Complaint stating that it was for "Sexual harassment, invading my privacy [and] disability discrimination." (Doc. 1). On his Civil Cover Sheet attached to his Complaint, Plaintiff indicated that this Court had jurisdiction over his action under federal question. Plaintiff indicated that the Nature of his Suit was Americans with Disabilities-Employment and, he stated that his Cause of Action was under Title VII, the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*    Plaintiff attached Exhibits to his Complaint, Exs. A & B, including copies of the EEOC Notice of Right to Sue and Plaintiff's medical records.  Named as sole Defendant was Olympic Steel, Inc., located at 1599 Nitterhouse Drive, Chambersburg, Franklin County, Pennsylvania, 17021.

As indicated, Plaintiff was proceeding *pro se.*  Plaintiff also filed an Application for Leave to Proceed *in forma pauperis.* (Doc. 2). Plaintiff indicated that he was unemployed and had no assets.  Thus, we screened Plaintiff's original Complaint.  *See Palencar v. Cobler Realty Advisors,*

Civil No. 09-0325, M.D. Pa., 7-24-09 slip op. pp. 5-6; *Wright v. Loftus*, Civil No. 09-1305, M.D. Pa., 11-20-09 Memorandum, p. 4; *Klatch-Maynard v. ENT Surgical Associates*, Civil No. 09-1963, M.D. Pa.

We found Plaintiff's original Complaint to be deficient. Plaintiff's original Complaint consisted of 4 typed pages, two of which are complete pages and two of which only contain a sentence. Plaintiff stated that he was employed by Defendant Olympic Steel from October 2006 through November 2011, and that he had a "disability which is apparent when [he] speaks." (Doc. 1, p. 1). Plaintiff stated his supervisor told other companies he was "slow" and, that Plaintiff's advice regarding cranes and their service should not be considered accurate. Further, Plaintiff seemed to state that he was sexually harassed since a cell phone photo of him in the bathroom at work was anonymously taken and texted to his supervisor. Plaintiff also stated that Defendant discriminated against him due to his depression and anxiety which were caused when he discovered the photo taken of him in the bathroom. Plaintiff also appeared to raise a claim under state law for emotional distress. Thus, Plaintiff raised state law claims for invasion of privacy and for intentional infliction of emotional distress.[1]

Plaintiff's original Complaint was not yet served on Defendant and the Court had not yet ruled on his Motion to proceed *in forma pauperis*. Plaintiff invoked the jurisdiction of this Court based upon federal question, 28 U.S.C. § 1331, since his Complaint alleged violations of the ADA.

---

[1] We noted that under Pennsylvania law, to state a claim of intentional inflICTION of emotional distress ("IIED"), Plaintiff must allege extreme and outrageous conduct which intentionally or recklessly causes him severe emotional distress. *See Killen v. Northwestern Human Services, Inc.*, 2007 WL 2684541, *9 (E.D. Pa.)(citations omitted).

On November 16, 2012, we issued an Order and directed Plaintiff to file an Amended Complaint within 15 days. (Doc. 8). We specified the deficiencies of Plaintiff 's original Complaint.

On November 27, 2012, counsel entered an appearance for Plaintiff, and requested more time to file Plaintiff's Amended Complaint. (Docs. 9 & 10). We then directed Plaintiff to file his Amended Complaint by January 17, 2013. (Doc. 11). Plaintiff then timely filed his Amended Complaint. (Doc. 12).

Named as Defendants in Plaintiff 's Amended Complaint are Olympic Steel, Danny Jones, Bob Davis, Thomas Neil, and Chris Schenzel. Plaintiff alleges that Defendant Danny Jones was his immediate supervisor, that Thomas Neil was plant manager and, that Chris Schenzel was Human Resources Director. Thus, Plaintiff alleges that these three individual Defendants were all employed by Olympic Steel in supervisory positions. It is not clear in Plaintiff's Amended Complaint if Defendant Bob Davis held a supervisory position with Olympic Steel. (Doc. 12, p. 4).

In Count I of his Amended Complaint, Plaintiff raises a claim against Defendant Olympic Steel for violation of the ADA. In Count II, Plaintiff raises a claim against all Defendants for Constructive Discharge as a Supplemental State Claim. In Count III, Plaintiff raises a claim against Defendants Jones, Davis, Neil and Schenzel for IIED. As his final Count IV, Plaintiff raises a claim against all Defendants for violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq*. Thus, Plaintiff asserts one federal claim, which is only against Defendant Olympic Steel, and three state law claims.

On January 29, 2013, we granted Plaintiff 's *in forma pauperis* Motion and directed Plaintiff's counsel to serve Plaintiff's Amended Complaint on Defendants. (Doc. 13). Defendants were

served and, on April 1, 2013, they jointly filed an Answer to Plaintiff 's Amended Complaint with Affirmative Defenses. (Doc. 20). Defendants admitted that Plaintiff was hired by Olympic Steel on October 23, 2006, as a maintenance mechanic, and state that Plaintiff remained in this position until his employment ended on November 11, 2011, when Plaintiff advised Defendant Schenzel that he was voluntarily resigning. Defendants admitted that Defendant Jones was Plaintiff's immediate supervisor during a portion of the time Plaintiff worked for Olympic Steel. Defendants admitted that Defendant Davis was a shipping supervisor and, state that Davis was not Plaintiff's immediate supervisor during the time Plaintiff worked for Olympic Steel. Defendants denied that any employees of Olympic Steel harassed Plaintiff when he was in the bathroom, and also stated that Plaintiff was observed several times sleeping fully clothed in a bathroom stall when he was supposed to have been working at Olympic Steel and that Plaintiff was disciplined for this conduct.

We issued a Scheduling Order on April 29, 2013, and subsequently extended the case deadlines. (Docs. 25 & 28).

On October 3, 2013, Defendants filed a Motion for Summary Judgment. **(Doc. 32).** Defendants also filed their Statement of Material Facts ("SMF"), their support brief and Exhibits. (Docs. 30, 33 & 34). After being granted extensions of time, on November 4, 2013, Plaintiff filed his opposition brief and his Response to Defendants' SMF with attached Exhibits. (Docs. 39 & 40). Plaintiff also filed his Declaration. (Doc. 41). After being granted an extension of time, Defendants filed their reply brief on November 20, 2013. (Doc. 44). Thus, Defendants' Motion for Summary Judgment is ripe for disposition.

## II.    SUMMARY JUDGMENT STANDARD.

A motion for summary judgment may not be granted unless there is not genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the suit. *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004). The moving party may demonstrate that no genuine dispute as to any material fact exists by citing to pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Fed. R. Civ. P. 56(c). The reviewing court may consider any materials in the record in determining whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c)(3). An issue of fact is "'genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving lack of genuine issue of material fact is initially on the moving party. *Childers*, 842 F.2d at 694 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden of proof shifts to the nonmoving party, however, when the moving party demonstrates no such genuine issue of fact. *Forms, Inc. v. Am. Standard, Inc.*, 546 F. Supp. 314, 321 (E.D. Pa. 1982), *aff'd. mem.*, 725 F.2d 667 (3d Cir. 1983). The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

In determining the existence of an issue of material fact, the reviewing court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). As such, the court must accept the nonmoving party's allegations

as true and resolve any conflicts in his or her favor. *Id.* (*citing Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

## III.  DISCUSSION.

This Court has jurisdiction over Plaintiff's ADA claim (Count I) against Defendant Olympic Steel under 28 U.S.C. §1331.[2]  *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004);  *Reilly v. Lehigh Valley Hosp.*, 2012 WL 895459, *4 (E.D. Pa. March 15, 2012). As mentioned, in Count IV, Plaintiff raises a claim against all Defendants for violation of the PHRA. This Court can exercise pendent jurisdiction over Plaintiff's state law claims  pursuant to 28 U.S.C. §1367.  *See Slater v. Susquehanna Co.*, 613 F. Supp. 2d 653, 657 (M.D. Pa. 2009).

Plaintiff was hired by Olympic Steel on October 23, 2006, as a maintenance mechanic, and Plaintiff remained in this position until his employment ended on November 11, 2011. Plaintiff alleges that Defendants discriminated against him during his employment with Olympic Steel based on his speech disability in violation of the ADA and the PHRA.[3]  Plaintiff alleges that his stutter is

---

[2]We note that "the ADA has not been interpreted to permit individual liability." *See Mathews v. Hermann,* 2008 WL 1914781, *12 (E.D. Pa. April 30, 2008)(citing *Emerson v. Thiel College,* 296 F. 3d 184, 189 (3d Cir. 2002)("individuals are not liable under Titles I and II of the ADA.").

[3]We note, as Defendants recognize,  that the analysis of Plaintiff's federal ADA disability discrimination claim (Count I)  applies equally to Plaintiff's PHRA claim (Count IV).  *See Mathews v. Hermann,* 2008 WL 1914781, *12 (E.D. Pa. April 30, 2008)("The PHRA's prohibition against disability discrimination is construed in accordance with the ADA, *see* 43 Pa.Cons.Stat. §955(a)(citing *Williams v. Phila. Housing Auth. Police Dept.,* 380 F. 3d 751, 761 n.

an actual disability under the ADA and the PHRA since it affects his speech and limits him in a major life activity. Thus, Plaintiff indicates that since he has a stutter, he is disabled under the ADA and the PHRA.

Defendants argue that Plaintiff's ADA and PHRA claims against them for disability discrimination fail as a matter of law since Plaintiff's stutter does not qualify as a disability as defined in the ADA and the PHRA. There is no dispute that the only disability which Plaintiff alleges he has in this case is his stutter. In fact, in his EEOC Complaint, Plaintiff stated that "I have a disability which affects my speech. **I have no other disability**. The disability is apparent when I speak. My supervisor, Danny Jones has stated to an outside company, Reliance Crane and to others that I am "slow" and therefore, my advice regarding cranes, which I service, should not be considered accurate." (Doc. 7, p. 12)(emphasis added). We agree with Defendants that based on the undisputed facts of this case, Plaintiff's stutter does not qualify as an ADA and a PHRA protected disability since it does not substantially limit him in his ability to communicate or any other major life activity.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C.

---

6 (3d Cir. 2004)("an analysis of an ADA claim applies equally to a PHRA claim."); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)). As such, we will discuss Plaintiff's ADA and PHRA disability discrimination claims together.

§ 12112(a).    Thus, "[t]he ADA prohibits covered employers from discriminating against disabled

individuals.  42 U.S.C. § 12112(a)."  *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d cir.

2010).

> To establish a prima facie discrimination case under the ADA, a plaintiff must prove:
>
> (1) that he or she has a disability within the meaning of the ADA; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she has suffered an otherwise adverse employment decision as a result of discrimination.

*Jamison v. Campbell Chain Cooper Tools*, 2009 WL 4429733, at *3 (M.D. Pa. Nov. 27, 2009)

(internal quotation marks omitted) (quoting *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d

751, 761 (3d Cir. 2004)); *Sulima v. Tobyhanna Army Depot*, 602 F.3d at 185(citation omitted);

*Reilly v. Lehigh Valley Hosp.*, 2012 WL 895459, *4 (E.D. Pa. March 15, 2012) (citations omitted);

*Mathews v. Hermann,* 2008 WL 1914781, *12(citations omitted).   "An individual is disabled if he

had 'a physical or mental impairment that substantially limits one or more of the major life activities

of such individual.' 42 U.S.C. § 12102(2)."  *Sulima v. Tobyhanna Army Depot*, 602 F.3d at 185.

A Plaintiff can establish a disability in one of three ways. *Jamison*, 2009 WL 4429733, at *4.

This Court held in *Jamison*:

> Plaintiffs can prove that (1) they have a "physical or mental impairment that substantially limits one or more of the major life activities of such individual;" or (2) they have a "record of such impairment;" or (3) they are "regarded as having such an impairment." 29 C.F.R. § 1630.2(g); 42 U.S.C. § 12102(1).

2009 WL 4429733, at *4.

The *Jamison* Court continued further:

> To have a record of impairment, plaintiff must either have "a history of" an impairment that substantially limits one or more major life activities or she must have

"been misclassified as having" the same. 29 C.F.R. § 1630.2(k). To prove that she was "regarded as having" a disability, plaintiff can show any of the following: (1) she has an "impairment that does not substantially limit major life activities but is treated by [defendant] as constitution such limitation;" (2) she has an "impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment;" or (3) she has no impairment but she is "treated by [defendant] as having a substantially limiting impairment." 29 C.F.R. § 1630.2(*l* ); *see also Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002). A plaintiff can make such a showing by demonstrating either that "despite having no impairment at all [defendant] erroneously believed that [plaintiff] had an impairment that substantially limited one or more of her major life activities" or that she "had a non-limiting impairment that [defendant] mistakenly believed substantially limited on or more of her major life activities." *Eshelman v. Agere Sys.*, 554 F.3d 426, 434 (3d Cir. 2009). The court must focus on "the reactions and perceptions of the persons interacting or working" with the plaintiff and not on the plaintiff's "actual abilities." *Kelly v. Drexel Univ.*, 94 F.3d 102, 108-09 (3d Cir. 1996).

2009 WL 4429733, at *4 n.8 (alterations in original).

It is the Plaintiff's position that he was constructively terminated from his employment as a maintenance mechanic with Olympic Steel due to his pronounced and severe stutter disability and, that he experienced adverse mistreatment, including ridicule and harassment by Defendant Jones and his co-workers. Plaintiff also claims that he was harassed by other employees when he used the bathroom at work, that a photo was taken of him when he was on the commode and circulated among the workers, and that his supervisors were aware of this. Plaintiff further states that all other maintenance workers at Olympic Steel were allowed to use intra-plant radios to communicate except for him, and that Defendant Jones ordered him not to use the radios since he stuttered. Plaintiff additionally states that on one occasion Defendant Jones told an employee from Reliance Crane, seemingly a customer of Olympic Steel, not to listen to Plaintiff since he was "kinda slow." Plaintiff states that due to the continued harassment by Defendant Jones and his co-workers as well as the hostile and condescending conduct towards him, he had to leave work at Olympic Steel on

9

November 11, 2001, which amounted to a constructive discharge. Plaintiff further states that he suffered retaliation due to complaining about the conditions and harassment he endured at work while employed at Olympic Steel. (*See* Doc. 40).

Plaintiff contends that his severe stuttering is a major life activity for purposes of the ADA and the PHRA. Plaintiff states that his stuttering impaired his communications and was a condition known to his supervisors since he began his employment with Olympic Steel. Plaintiff states that his stuttering resulted in misinterpretations about his intelligence and resulted in limitations on his "workplace rights" to use the same equipment as other workers, *i.e.*, the intra-plant radios and telephones. Plaintiff states that his stuttering caused him to become an object of ridicule at work by Defendant Jones and his co-workers, and caused them to treat him badly. Plaintiff points out that he exhausted his administrative remedies with respect to his ADA and PHRA claims and received his right to sue notice from the EEOC, and his exhibits show this.

Defendants argue that Plaintiff has not established a prima facie case under the ADA and the PHRA since he has not produced evidence that he is a "qualified individual with a disability." Plaintiff contends that he had a disability of which Olympic Steel was aware and that he was substantially limited in his major life activities.

The ADA defines a "qualified individual with a disability" as

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that individual holds or desires.

42 U.S.C. § 12111(8).

In order for a Plaintiff to establish a discrimination claim under the ADA, he must show that he was a "qualified individual with a disability" at the time the adverse employment actions were taken. *Bjorklund v. Phila. Housing Auth.*, 118 Fed. Appx. 624, 625-626 (3d Cir. 2004). Plaintiff seeks retrospective relief since he requests damages for pain and suffering, humiliation and embarrassment and, for lost wages and benefits. (Doc. 12, pp. 8-9). In order to maintain a claim for retrospective relief under the ADA for Olympic Steel's allegedly discriminatory acts, Plaintiff must establish that he was a "qualified individual with a disability"during the applicable time. *Felix v. N.Y. City Transit Auth.*, 154 F.Supp. 2d. 640, 652 (S.D. N.Y. 2001).

We also note that Plaintiff's amended pleading attempts to raise a claim under the ADA retaliation provision, 42 U.S.C. § 12203(a).

### A. Prima facie case

As mentioned, Plaintiff establishes a *prima facie* case of discrimination under the ADA by demonstrating: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) he has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998)(*citing Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)).[4]

Under the ADA, as the *Thompson* Court stated, a person has a disability if:

The ADA defines the term "qualified person with a disability"

---

[4]Defendants correctly state the elements of a prima facie case of discrimination under the ADA in their Briefs. Docs. 34 & 44.

as follows:

> The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.
>
> 42 U.S.C. § 12112(8). 42 U.S.C. § 12102(2) sets forth three possible definitions of disability for purposes of the ADA: "The term 'disability' means, with respect to an individual - - (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

371 F. Supp. 2d at 671-672 (Citation omitted).

Defendants argue that even if Plaintiff had a stuttering impairment, there is no evidence that he had any major life activity, including working and communicating, that has been substantially limited. In his amended pleading, Plaintiff alleges that he "has a disability within the meaning of the ADA, to wit, an extremely severe stuttering problem." Plaintiff alleges that he "is highly quailed to perform the essential functions of his job, maintenance mechanic, which he has been doing for many years," namely, from 2006 through early 2011, and that his stuttering did not interfere with his employment proficiency at Olympic Steel. (Doc. 12, ¶'s 39-41). Further, Plaintiff alleges that he "suffered retaliation as a result of complaining about certain terms and conditions of work and employment, and because he complained about the unlawful harassment he was receiving, and because he sought medical intervention." (*Id.*, ¶ 42 e).

Initially, we agree with Defendants that Plaintiff fails to properly state a claim in his amended pleading under the ADA retaliation provision, 42 U.S.C. § 12203(a). (Doc. 34, p. 17 n. 5). To state a prima face case of retaliation under the ADA, a Plaintiff must establish "(1) that she engaged in 'protected activity,' (2) that she suffered a materially adverse action, and (3) that there is causal connection between the adverse action and the protected activity." *Kendall v. Donahue*, 913 F.Supp.2d 186, 191 (citation omitted). As Defendants correctly note, Plaintiff "Ripple identified no protected conduct in his Amended Complaint and by his own admission, ..., Ripple did not mention or complain to any Olympic manager that any of the incidents he characterizes as harassment were related to his stutter or were otherwise in violation of the law." (*Id*.). We recognize that Plaintiff averred in his Declaration, which he filed in the present case, that most of the numerous write-ups he received over the five years he worked for Olympic Steel for being tardy, were "retaliation for stuttering." (Doc. 41, p. 1). However, we do not find that this conclusory averment without any substantiation satisfies the elements of ADA retaliation claim.

Additionally, in his August 2011 EEOC Complaint, Plaintiff stated that "I am also filing for retaliation because I complained about [the picture taken of him in the bathroom]." (Doc. 7, p. 13). Thus, simply because Plaintiff Ripple alleged retaliation for complaining about the photo taken of him in the bathroom at work does not constitute a facially valid ADA complaint. In his EEOC Complaint, Plaintiff did not state that Defendants retaliated against him for complaining about mistreatment due to his stuttering. As such, alleging retaliation due to Plaintiff's complaint about the photo of him in the bathroom does not amount to an ADA retaliation claim.

Therefore, we agree with Defendants that they are entitled to summary judgment with

respect to Plaintiff 's ADA retaliation claim.

Next, we consider whether Plaintiff has established that he is a qualified individual with a disability under the ADA due to his stuttering.

The Court in *Strayer v. New Enterprise Stone & Lime Co., Inc.*, 2006 WL 2773479, *4-*5 (W.D. Pa.), stated as follows:

> [P]laintiffs claiming a physical impairment under the ADA must demonstrate "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs; respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine[.]" 29 C.F.R. § 1630.2(h)(1). The major life activities that the impairment must substantially limit are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Such an activity is "substantially limited" if the individual is "[u]nable to perform a major life activity that the average person in the general population can perform," or if she is "[s]ignificantly restricted as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(J)(1)(i)-(ii).
>
> The following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

*See aslo Sulima v. Tobyhanna Army Depot*, 602 F.3d at 185.

Defendants contend that the evidence does not show that Plaintiff Ripple's stutter qualifies as a disability and, the evidence does not show that Plaintiff was substantially limited in a major

life activity. Defendants point to Plaintiff's deposition testimony which they state "conclusively shows that [Plaintiff] is not disabled under the ADA or PHRA." (Doc. 44, p. 1). Indeed, the transcript of Plaintiff's August 23, 2013 deposition, consisting of 216 pages of testimony, clearly shows that Plaintiff could speak succinctly and understandably. (Doc. 30-1). The deposition, which began at 9:13 am and concluded at 3:01 pm, shows that Plaintiff's stutter did not substantially limit his speaking, a major life activity. Further, we do not find any evidence to show that Plaintiff 's stutter substantially limited any major life activity. We find that Plaintiff was able to effectively work at Olympic Steel from October 23, 2006 until his employment ended on November 11, 2011.

After Plaintiff finished his probationary period with Defendant Olympic Steel he signed a Post Employment Self-Identification Form for Veterans and Individuals with a Disability. The form asked Plaintiff if he was an individual with a disability, that is any person who has a physical or mental impairment which substantially limits one or more major life activities, and Plaintiff marked "no." Plaintiff was also asked on the form if he required any reasonable accommodations to perform his job duties and he marked "no." (Doc. 30-1, pp. 10-11).

In his deposition, Plaintiff stated that he had a stutter his entire life, that he does not take any medication for it, and he does not currently attend speech therapy. Plaintiff saw a speech therapist when he was in high school. Plaintiff does not have any other medical condition. Plaintiff admitted that he was sensitive about his stutter. (Doc. 30-1, pp. 6 & 34). Plaintiff indicated that he was highly skilled maintenance mechanic, that he did a good and effective job during his time working for Olympic Steel, and that his stutter did not hinder in any way his job performance. Plaintiff admitted that he could speak to machine operators which was required for his job, that quite often

15

he used the radio and telephone at work and, that he could verbally warn co-workers about potential dangers if required. (*Id.*, pp. 15-16).

Thus, Plaintiff was able to effectively communicate at work and as stated, his deposition transcript shows that he could communicate in his daily activities. The evidence shows that Plaintiff was able to interact with others. The evidence does not show that Plaintiff's stutter interfered in any with his ability to work or communicate, and thus it does not qualify as an ADA protected disability. We find that Plaintiff only raises conclusory allegations that his stuttering is a disability protected by the ADA. As Defendants point out (Doc. 44, p. 5), even in his Declaration (Doc. 41), Plaintiff "Ripple fails to allege that he was substantially limited in any major life activity."

While Plaintiff had a speech impairment and his stuttering mildly affected his ability to speak, we agree entirely with Defendants that there is no evidence which shows that Plaintiff is substantially limited in speaking. As the *Strayer* Court stated, "there is a difference between a disability and an impairment." The *Strayer* Court further stated:

> "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Ky., Inc.*, 534 U.S. at 195, 122 S.Ct. at 690, 151 L.Ed.2d at 629. "To qualify as disabled, a claimant must further show that the limitation on the major life activity is "substantial." *Id.*

2006 WL 2773479, *5.

As mentioned, the deposition transcript demonstrates that Plaintiff's stuttering did not substantially impede his speaking, and shows that Plaintiff could orally communicate without difficulty. *See Sterling v. McKesson Automation, Inc.*, 2006 WL 2792203 (W.D. Pa. Sept. 26, 2006).

Also, as discussed, Plaintiff admitted that his stuttering did not significantly impede his ability to orally communicate and to convey his thoughts to others. Plaintiff stated that his stutter did not affect his ability to care for himself, to perform manual tasks, to walk, to see, to hear, to breathe, and to learn. (Doc. 30-1, pp. 16-17). In fact, as Defendants point out, Plaintiff merely speculated that his stutter would limit him if he were a 911 emergency operator, which he was not. (*Id.*, p. 13). Further, Defendants correctly state that Plaintiff himself did not consider his stutter as substantially limiting him in any major life activity and he did not believe that his stuttering required him to receive any reasonable accommodation to perform his work as a maintenance mechanic.

Plaintiff submitted therapy Progress Notes from Craig Walters "ACSW/LCSW" of Sun Pointe Health dated in August 2011, in which Plaintiff was treated for work stress and anxiety and depression over the ways he was being treated at work. (Doc. 40-1, pp. 2-6). Plaintiff stated that his expectation for the therapy was "how to cope." The therapy plan was to develop and implement a plan for helping Plaintiff cope and deal with work stress. Plaintiff told Walters that he was put down at work, harassed, disrespected and reprimanded when he asked questions, including his disagreement with the new point system his boss was implementing at work. Plaintiff reported to Walters that "[because] of some stuttering speech impediment all his life, worse when stressed, [he] feels boss/coworkers make fun [and] think he's dumb because of stuttering." Plaintiff also verbalized confidence in his work skills but indicated that they were not appreciated by his employer. Plaintiff indicated that he lived with his girlfriend. Plaintiff stated that he felt he was treated like he was "dumb" at work due to his stuttering. In the August 25, 2011, Progress Note, it was noted that Plaintiff 's affect was less distraught and he was more animated. Plaintiff reported

coping better with work stressors and planned on returning to work in mid-September. In the September 21, 2011, Progress Note, it was noted that Plaintiff was back at work and, he reported and presented with moderate improvement in his mood and anxiety symptoms, that Plaintiff expressed more positive self-statements and confidence in himself and his work skills. Plaintiff again stated that he felt like he was treated as "stupid" at work because he stuttered, but he proudly reviewed his technical and mechanical skills. In the November 1, 2011 final Progress Note, Plaintiff had starting working the third shift at work and he reported little and no conflict at work. Plaintiff reported feeling a lot better with improved mood/anxiety and, he requested no further therapy. It was also noted that Plaintiff achieved his therapy goals.

Plaintiff also submitted a March 29, 2012 letter from Physician Assistant Thomas Schaeffer of Geisinger Medical Group in Lewistown, PA, which indicated that Schaeffer saw Plaintiff on July 13 and 23, 2011. Plaintiff complained about depression and anxiety due to work stress, and stated that he felt persecuted by his superiors and co-workers. Plaintiff stated that he developed chest pain over his anxiety at work and when to the local emergency department for treatment. Plaintiff was treated with antidepressant medication and he was referred to a psychiatrist for evaluation and treatment. (Doc. 40-1, p. 10).

We find that these therapy session records and PA Schaeffer's letter reflect Plaintiff 's beliefs and feelings about the stress he felt at work, but that they do not constitute medical evidence showing that Plaintiff was substantially limited in any major life activity due to his stuttering. In fact, the therapy records substantiate that Plaintiff 's stutter did not limit any major life activity. We also note that we did not find any records showing Plaintiff was seen by a psychiatrist for evaluation and

treatment.

Defendants cite to several cases in which courts have held that a Plaintiff 's stutter which did not limit any major life activity was not a disability protected by the ADA. (Doc. 44, pp. 2-3). We agree with the cases cited to by Defendants and find them persuasive since their facts are similar to the facts of our case. We also agree with Defendants that the case of *Medvic v. Compass Sign Co.*, LLC. 2011 WL 3515499 (E.D. Pa. Aug. 10, 2011),[5] in which the Court held that the stuttering of its Plaintiff constituted an impairment that was a disability under the ADA, is not on point with our case. In *Medvic*, unlike our case, Plaintiff submitted evidence from a medical professional that his stuttering was both severe and substantially limited his ability to communicate. Plaintiff also produced specific evidence that his stuttering substantially affected him in his own experience. Plaintiff Ripple has failed to produce such evidence as the Plaintiff in *Medvic* produced. Also, as discussed, it is clear from the lengthy deposition transcript that Plaintiff Ripple can readily communicate his thoughts to others and that his stuttering does not impede his ability to convey what he wants to say. The deposition transcript does not reveal that Plaintiff Ripple had any trouble in responding to questions and, it does not reveal that Plaintiff required multiple attempts to convey his responses. As the Court in *Medvic* noted, "[i]n the context of determining if a speech impediment substantially limits a Plaintiff 's ability to communicate, courts may look to the Plaintiff's own deposition testimony to assist them in making the determination." *Id.*, *6 n. 9(citations omitted). In short, we do not find any evidence that Plaintiff Ripple's stuttering impeded his ability to work at Olympic Steel or impeded his social life.

---

[5]We note that Plaintiff Ripple did not cite to the *Medvic* case for support.

Thus, we find that the undisputed material facts show that Plaintiff failed to establish the first threshold of a prima facie ADA disability discrimination case, *i.e.*, he was an individual with a disability.

As the Court in *Strayer* indicated, as Defendants recognize (Doc. 44, pp. 7-8), our inquiry now must focus as follows:

> Having found that [plaintiff] did not raise a genuine issue of material fact regarding whether he is disabled under 42 U.S.C. § 12102(2)(A), the Court must now assess whether [plaintiff] raised a genuine issue of material fact regarding whether he is statutorily disabled due to either a record of a substantially impaired major life activity or from Defendant regarding him as having such an impairment. 42 U.S.C. §12102(2)(B)-(C).

*Id*. at *7.

We agree with Defendants, as thoroughly discussed above, that Plaintiff did not produce evidence that he had a record of a disabling impairment. Plaintiff's therapy notes do not show a record of a substantially impaired major life activity. Nor do Plaintiff's subjective feelings that he was harassed at work due to his stuttering show a record of a substantially impaired major life activity. Thus, the issue is whether Plaintiff has produced sufficient evidence to permit a reasonable factfinder to conclude that Defendants regarded him as disabled pursuant to 42 U.S.C. §12102(2)(C). *Id*.

Defendants correctly point out that Plaintiff "Ripple, ..., did not allege in his Amended Complaint that his stutter is a protected disability because any of the Defendants 'regarded him' as disabled." (Doc. 44, p. 8). Nor has Plaintiff submitted evidence to show that Defendants regarded him as disabled due to his stuttering. As Defendants recognize (Doc. 44, p. 8), Plaintiff's

attempt to raise a new claim in his opposition brief that Defendants regarded him as disabled is not sufficient to properly assert such a claim. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss [or summary judgment motion]. *Ex rel. Zimmerman,* 836 F.2d at 181." *Sung Tran v. Delavau, LLC*, 2008 WL 2051992, *11 (E.D. Pa. 5-13-08).

Regardless, we concur with Defendants that Plaintiff Ripple fails to demonstrate through the evidence that he was regarded as disabled by them due to his stuttering. Defendants stated that Plaintiff did a good job at Olympic Steel, that he was a knowledgeable mechanic with good technical skills and, this his stuttering did not irritate them. Plaintiff's biggest work problem was his attendance, including tardiness and absenteeism. Plaintiff was given a 1-day suspension for his poor attendance. Defendant Jones testified that Plaintiff appeared reasonably intelligent in the way he preformed his duties at Olympic Steel and in his ability to deal with complex equipment Defendant Jones stated that he did not complain about Plaintiff 's job performance and never complained about Plaintiff being slow. Defendant Jones stated that Olympic' s customers did not complain about Plaintiff. (*See* Jones dep. Doc. 30-4 at pp. 6-10, 22-23). Defendant Neil stated that Plaintiff was only disciplined for sleeping in a bathroom at work and for absenteeism and tardiness. Defendant Neil stated that Plaintiff was a competent and capable mechanic. (See Neil dep. Doc. 30-5 at pp. 6-7). In fact, Plaintiff was tardy 31 times at Olympic from April 3, 2006 through September 29, 2006. (Doc. 30-2, p. 142). Plaintiff was late 81 times and he called off from work 17 days from January 1, 2007 through August 2008. (Doc. 30-2, p. 172). Plaintiff was issued a final formal written reprimand for his continued inability to adhere to Olympic Steel's attendance

policy. (Doc. 30-2, pp. 171-172). Plaintiff was directed to report on time for his job and he was admonished that if he did not, he would subject himself to termination. Further, Plaintiff's Performance Review with Olympic repeatedly noted Plaintiff 's continued tardiness in reporting to work. Plaintiff did not claim that he was late due to a disability. (Doc. 30-2, pp. 147-171).

Also, Defendants did not have difficulty in speaking with Plaintiff despite his stuttering, they had no difficulty in understanding Plaintiff in person and on the work radio and, they spoke with him on a regular basis during the work day. (Jones dep. Doc. 30-4, p. 27; Neil dep. Doc. 30-5, p. 11 , and Davis dep. Doc. 30-3, pp. 2-3). Defendant Davis stated that while Plaintiff stuttered, he never had any problems in communicating with Plaintiff and never really thought too much about it. Davis said that he never had any issues with Plaintiff 's communicating.

Accordingly, since we find that the undisputed material facts show that Plaintiff failed to establish that he was an individual with a disability, we will recommend that Defendants' Motion for Summary Judgment be granted with respect to Plaintiff's ADA and PHRA discrimination claims. As noted above, "the Court's treatment of Plaintiff 's ADA claims properly applies to [his] PHRA claims. *See Kelly v. Drexel Univ.*, 94 F. 3d 102, 105 (3d Cir. 1996)." *Schmidt v. Mercy Hosp. of Pitts.*, 2007 WL 2683826, *2 n. 1 (W.D.Pa. Sept. 7, 2007).

In Count II of his Amended Complaint, Plaintiff raises a constructive discharge claim against all Defendants as a supplemental state claim. Plaintiff avers that "Defendants unlawfully subjected [him] to a series of persistent harassments and egregious personal mistreatment on account of his disability, stuttering, causing [him] so much emotional upset and stress that [he] was forced to leave his employ with Defendant Olympic Steel[,] Inc." (Doc. 12, p. 9).

In *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502-03 (3d Cir. 2010), the Third Circuit

Court of Appeals stated:

> We employ an objective test to determine whether an employee can
> recover on a claim of constructive discharge .... [and must therefore]
> determine whether a reasonable jury could find that the [employer]
> permitted conditions so unpleasant or difficult that a reasonable person
> would have felt compelled to resign."*Duffy v. Paper Magic Group, Inc.,*
> 265 F.3d 163, 167 (3d Cir.2001) (internal quotations and citation
> omitted). Factors we have found relevant to this issue are whether the
> employer (1) "threatened [the employee] with discharge" or "urge[d] or
> suggest[ed] that she resign or retire," (2) "demote[d] her," (3) "reduce[d]
> her pay or benefits," (4) "involuntarily transferred [her] to a less desirable
> position," (5) altered her "job responsibilities," or (6) gave "unsatisfactory
> job evaluations." *Clowes v. Allegheny Valley Hosp.,* 991 F.2d 1159, 1161
> (3d Cir.1993).

In *Colwell*, the Third Circuit Court agreed with the M.D. Pa. District Court "that no

reasonable juror could find that the actions to which [Plaintiff] Colwell refers made her workplace

so unbearable that a reasonable person would have felt compelled to resign. *See Gray v. York*

*Newspapers, Inc.,* 957 F.2d 1070, 1083 (3d Cir.1992)("[T]he law does not permit an employee's

subjective perceptions to govern a claim of constructive discharge.")(quoting *Bristow v. Daily Press,*

*Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985))." *Id.* at 503.

Thus, "[f]or a claims of constructive discharge, '[s]pecifically, a court must determine

'whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or

difficult that a reasonable person would have felt compelled to resign.'" *Thompson v. AT&T Corp.,*

371 F.Supp.2d 661, 681 (W.D.Pa. 2005)(citing *Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163, 167

(3d Cir. 2001)).

At the outset, as discussed above, we do not find that Plaintiff Ripple suffered from a

disability under the ADA. We agree with Defendants that none of the objective factors which the Court detailed in *Colwell* for a constructive discharge claim are present in our case. Defendants point out that Plaintiff testified that he filed this instant action against Olympic Steel to prove a pont that it could not get away with treating him differently due to his stuttering. (Doc. 30-1, p. 9). However, as discussed above, we find that Plaintiff 's constructive discharge claim is merely based on his subjective perceptions that he was treated differently due to his stuttering.

Defendants correctly state, that Plaintiff "Ripple has established no facts that he was threatened with discharge, urged to quit, had a reduction in pay or suffered any adverse action taken against him, nor has he established that any of these actions were at all related to his purported 'disability.'" Plaintiff admitted in his deposition that Defendant Davis did not ridicule him, harass him or get in his face. Plaintiff stated that Defendant Neil did not treat him badly, and that nobody else at Olympic Steel teased him badly. (Doc. 30-1, pp. 33-34). Plaintiff stated that Defendant Schenzel was rude and vulgar to him (not swearing at him), did not speak to him in a normal tone and, treated him in a condescending manner. However Plaintiff admitted that Defendant Schenzel did not call him names and he did not say anything about Plaintiff 's stutter. (Id.). As indicated, Plaintiff stated that he was sensitive about his stuttering and he did not like when anybody misjudged him as being dumb due to his stuttering. (*Id*.). Significantly, Plaintiff did not testify that any Defendant misjudged him due to his stuttering, and as mentioned, Plaintiff did testify that neither Defendant Davis nor Neil treated him badly.

Additionally, Defendants correctly point out, that Plaintiff "Ripple voluntarily left his position, immediately following a restful vacation, after receiving his requested shift change and – by his own

testimony – months after the last incident he incorrectly characterized as unlawful harassment."
(Doc. 34, p. 27). Moreover, as stated above, the November 1, 2011 final Progress Note which
Plaintiff submitted, indicated that Plaintiff had starting working the third shift at work and he
reported little and no conflict at work. Plaintiff also reported feeling a lot better with improved
mood/anxiety.

We find that the evidence shows Plaintiff's work environment at Olympic Steel was not
hostile and, the evidence shows that Plaintiff was not harassed and ridiculed due to his stuttering.
While some workplace teasing of Plaintiff occurred, we do not find that Plaintiff has presented
sufficient evidence to show that it was related to his stuttering. Rather, we find that Plaintiff was
sensitive to his stuttering and that he filed this case to prove a point. We find that Plaintiff 's own
submission of his treatment records do not reveal that his workplace at Olympic Steel was so
unbearable that a reasonable person would have felt compelled to resign. As discussed, the
individual Defendants testified that their main complaint about Plaintiff was his poor attendance
and tardiness as well as his occasional sleeping in the bathroom at work. In short, the evidence
in this case shows a reasonable jury could not find that Olympic Steel permitted conditions so
unpleasant or difficult that a reasonable person would have felt compelled to resign. *See Lucas v.
City of Phila*., 2013 WL 2156007, *19 (E.D.Pa. May 17, 2013).

Thus, we will recommend that the Court grant Defendants' Summary Judgment Motion with
respect to Plaintiff's constructive discharge claim.

Finally, since we find Defendants are entitled to summary judgment with respect to Plaintiff's
federal claims, we will recommend that the Court should decline to exercise its supplemental

jurisdiction over Plaintiff's remaining state law claims in his Amended Complaint. *See Osei v. La Salle University*, 2012 WL 3553617, *3 n. 3 (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S. Ct. 1130 (1966); 28 U.S.C. §1367).

**IV.     RECOMMENDATION.**

Based on the foregoing, it is respectfully recommended that the Court grant Defendants' Motion for Summary Judgment **(Doc. 32)** with respect to Plaintiff 's federal claims in his Amended Complaint **(Doc. 12).** It is recommended that the Court enter Judgment in favor of all Defendants and against Plaintiff Ripple with respect to his federal claims. Further, it is recommended that the Court decline to exercise its supplemental jurisdiction over Plaintiff's remaining state law claims in his Amended Complaint.

Finally, it is recommended that the Court close this case.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: December 12, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


WAYNE RIPPLE,                          :        CIVIL ACTION NO. **1:CV-12-2234**
                                       :
            Plaintiff                  :
                                       :        (Judge Caldwell)
      v.                               :
                                       :        (Magistrate Judge Blewitt)
OLYMPIC STEEL, INC., *et al.*,         :
                                       :
                                       :
            Defendants                 :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **December 12, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely Objections to the foregoing Report and Recommendation, may

cconstitute a waiver of any appellate rights.

s/ Thomas M. Blewitt
THOMAS M. BLEWITT
United States Magistrate Judge

**Dated: December 12, 2013**